## JULY TERM, 1855.

ALFRED A. COHEN, RICHARD ROMAN and EDWARD JONES, Assignees of Isaiah C. Woods and of Adams & Company, Appellants, *v.* SAMUEL BARRETT and ROBT. SHERWOOD, Respondents.

Proceedings in insolvency are not *stricti juris* either proceedings in law or equity, but a new remedy or proceeding, created by statute, the administration of which has been vested in the District Courts of this State, independent of their Common Law or Chancery powers as Courts of general jurisdiction.

Whenever a new right is created by statute, and the enforcement of such right is committed to a Court even of original jurisdiction such Court *quoad hoc* is an inferior Court, and must pursue the statute strictly.

Our statute, though not strictly speaking, a bankrupt law, may be treated as such, or as an insolvent act, or both.

Where the petition of the insolvent shows upon its face, that a portion of the indebtedness from which he seeks to be discharged, has been contracted as a banker, the Court has no jurisdiction of the proceedings.

The statute denies the benefit of the Act to those insolvents, who have been guilty of fraud, and in such cases the Courts would be bound to take jurisdiction, it not appearing upon the face of the proceedings, that the party had been guilty of any act which would prevent such jurisdiction from attaching; and having once obtained possession of the whole fund it would be competent for a Court of Chancery to proceed and distribute, even if it should afterwards appear, in the course of judicial investigation, that the insolvent had been guilty of some act which prevented his discharge.

The mere right of discharge is not the only relief resulting to the debtor. Exemption from arrest upon mesne or final process, as well as from the costs and expenses of harrassing litigation, is a portion of the relief.

It is well settled that the title of an Act is no part of the law itself, although it may be referred to in cases of doubt to ascertain the intention of the Legislature.

APPEAL from the Superior Court of the City of San Francisco.

Action brought on certain promissory notes, of which the defendants were indorsers.

The plaintiffs sued as the assignees of insolvent debtors, and proved their title to the notes in suit, through the proceedings of I. C. Woods and Adams & Co. against their creditors, in insolvency.

It was admitted that the firm of Adams & Co., of which I. C. Woods was a general partner, were engaged at the time of filing their petition in insolvency, in the business of express men and bankers, and that a large proportion of the indebtedness set forth in their schedule, was for moneys deposited with them by their customers in the ordinary course of banking business, and that several of their creditors had filed their objection to the proceedings; and that such proceedings were pending and not finally determined.

It was also admitted that I. C. Woods individually was and had been for a considerable time prior to the filing of his petition, the owner of a large tract of land in the county of San Francisco, which he was engaged in farming on an extensive scale.

The Court considered the proceedings in insolvency invalid, and on motion of defendants' Attorney nonsuited the plaintiffs, from which decision they appealed.

*John T. Doyle, Eugene Casserly* and *Tod Robinson,* for Appellants.

The objections argued against the proceedings are, that the insolvents, having *contracted* debts as bankers, as well as express men and otherwise, cannot petition in insolvency.

We insist that the section of the Act under which this proposition is maintained, is not to be construed as forbidding one who owes debts of the character pointed out in the section, from distributing his property equitably among his creditors, through the medium of the insolvent laws, but only from being finally discharged, if he fails, and his estate

is insufficient to pay up debts which he has contracted in a fiduciary capacity.

We must consider the objects, scope and character of the Act in question, and compare its various provisions.

The title of the Act discloses its two-fold objects—

1st. The relief of insolvent debtors.

2d. The protection of creditors.

Its provisions throughout are framed with studied reference to the attainment of both these objects, but we think a careful examination of them will show that the most of them are designed for the latter of these purposes. The only substantial provision for the relief of the debtor is that on compliance with the provisions of the law, he may be *discharged from his debts;* in fact that being the *utmost benefit* that can be conferred on the debtor, the powers of legislation in his favor or relief were exhausted in enacting it, and all the other provisions of the law must be regarded as aiming at the other end in view—namely, the protection of the creditors.

What are creditors to be protected against ?

What mischiefs are they liable to in such cases ?

Bad faith or dishonesty in the contraction of debts—fraudulent dispositions or concealment of property by the debtor—and preferences of one creditor or set of creditors over another.

On all these points the provisions of the Act are very stringent.

Sections 20 to 23 provide for the investigation of any charge made against the insolvent, and afford a means of most rigid scrutiny into all his transactions.

Sections 25, 27, 28, 29, 30 and 31 denounce all acts of the classes indicated, as frauds in the law, and deny to the debtor guilty of them, the *benefit of the act,* that is *the discharge* which, by section 24, he is to receive if found not guilty of any of those acts.

The words *benefit of the act* are used in all the sections referred to, as well as in sections 32, 33 and 36, and always apparently in the same sense. .

Now, as the only sections offering or conferring any benefit on the insolvent are the 1st and 24th, which give him a discharge, it seems too clear for argument that the benefits they offer to him, if his proceed-

ings are in good faith and conformably to law, are the same benefits which are to be denied to him if his proceedings prove to be otherwise.

Besides, by section 20, the accusation of fraud, bad faith, &c., and of acts disqualifying from this benefit, is not to be tried; nor the issue on that question even framed, till *after the appointment* of assignees, who are to be elected by the creditors. Suppose, then, that after the election of assignees, and their taking possession of the property, it is proved that the debtor has committed frauds under the Act, what becomes of the property surrendered? Is it to be given back to the debtor *already convicted of fraud*? Surely not.

Section 9, 34 and 37 settle this matter conclusively, for they show clearly that no such absurd result was ever contemplated by the framers of the Act.

From the moment of the surrender, or filing of the petition, the property is in the custody of the law, for the benefit of the creditors who, by section 9, *may have a receiver* appointed, on suggesting a fact which would of itself deny the debtor his discharge, whose chosen assignees take title *from the filing of the petition*, (section 34,) and may compel the debtor, by imprisonment, to deliver over to them all his property, whether he gets a discharge or not. (Section 39 )

None of the provisions of the law relative to the duties of the assignees, in the title, custody or administration of the assets, are made in any way contingent on the debtors being entitled to the benefit of the Act.

Moreover, the wording of section 30 is in no sense capable of the interpretation sought to be given to it.

It does not say that *all bankers, brokers and commission merchants* shall be denied the benefit of the Act, but it is all *unfaithful* depositories,—all such as neglect or refuse to pay up moneys received by them as bankers, brokers, commission merchants, &c., " *shall be denied* the benefit of the Act." It is not his profession or calling which disqualifies him—it is *his acts or omissions.*. Any petitioner, whatever his occupation, who can be proved guilty of those acts or omissions, shall be denied the benefit, which if not guilty he shall receive. A person following any trade or calling may, as to *certain debts*, be charged to be an unfaithful depository, or he may be alleged to have contracted

others as a broker or fiduciary, &c. Charges of this character are to be made and tried under section 20, the insolvent having a right to answer and be heard by counsel before a Jury, after the assignees have been appointed. So, on the other hand, a banker, broker or commission merchant may have been faithful to his trusts as such, and yet become insolvent from speculation or other causes, and be entitled to his discharge.

In this case, Woods, individually, is proved to have been a farmer, and the firm of Adams & Co. to have been express carriers.

Besides, when is the debtor to be denied this benefit? Undoubtedly when he comes before the Court, asking his discharge. The prayer of his petition is two-fold : 1st. That he may assign his property; 2d. That he may be discharged from his debts. The granting of the first portion of this prayer is almost a matter of course. We can imagine but few cases where it could be refused. The granting of the second is quite a different affair.

But, it is urged that by section 1, *every insolvent debtor* may be discharged from his debts, and as by subsequent sections, *certain debtors* cannot be discharged, it follows that persons guilty of those acts are not to be deemed "*insolvent debtors*" within the intent and meaning of the Act, and none of its provisions applying to them, they are not forbidden by the thirty-ninth section to make a common law assignment, and thus a privilege denied to the honest debtor *is conceded only to those guilty of acts which the law denounces as fraud.*

Section 26 of the law also illustrates the intention of the Legislature in this respect, and shows that in reference to the assignment of the property, the only interest which the Court is to regard is that of "*the mass of the creditors.*" In this case the District Court has approved of the appointment of the assignees, and under that section the approval is conclusive.

Under the United States Bankrupt Act of 1841, under phraseology not dissimilar to the language of our law, it was held that persons owing fiduciary debts might petition under the law, but could not be discharged from debts of that character. *In re,* Levi H. Young, V. Law Rep., 128. *In re,* Horace Lord, Ib., 258. *In re,* George Brown,

Ib., 259. *In re*, J. C. Tibbetts, Ib., 259. Chapman *v.* Forsyth, 2 How. S. C. R., 202. Cheever *v.* Hays, 3 Cal., 472.

Nothing is more consonant to all ideas of natural justice than that the effects of a debtor who is unable to pay all his debts in full, should be distributed proportionally among all his creditors without distinction or preference, and this is equally the case whether the insolvent is an individual, a copartnership, or a corporation. The laws of all civilized countries, from the Code of Justinian to the present day, have sought to encourage this equal distribution of an insolvent's estate; in some instances, by holding out benefits to the debtor as an inducement so to dispose of them—such are the insolvent laws of England, and of the various States, and the voluntary cession of goods of the civil law—in some instances, by putting it in the power of any creditor to compel a surrender of an insolvent debtor's property to his creditors;—such are the English Bankrupt Acts, and the forced cession of the civil law; and in some States, as in our own, any other disposition of a debtor's property is absolutely forbidden.

This equal distribution being then a policy favored by all civilized nations, so eminently favored by the laws of our own State; Compiled Laws, p 123, § 9; Ib. p 412, § 241; Ib. p 322, § 39, so just and beneficial in itself, the laws of California will present a singular anomaly if, in aiming to attain that object, they have in fact entirely and absolutely frustrated it, in the large class of cases where the insolvents are copartners. For, if Adams & Co. cannot distribute their assets in insolvency on the petition of Woods, then four-fifths of the mercantile partnerships in California (all who have partners abroad) are in the same predicament; and of the remainder, none can do so without the consent and concurrence of *all* the partners.

Voluntary assignments for the benefit of creditors whether with or without preferences, are forbidden absolutely (Insolvent Law, § 39, Cheever *v.* Hays, 3 Cal., 472;) and hence, unless it be in the power of one partner to take legal proceedings for the equitable distribution of the property, such distribution of the property cannot take place.

So much for the general policy of the Act, and the results to flow from either exposition of it.

We propose now to show, upon principle and authority, that the

firm of Adams & Co., being insolvent, the petition of Woods had the effect to bring into Court the assets of the firm for distribution.

*First, upon principle,* partners are joint tenants of the partnership property.

They are seized *per my* and *per tout.* Each owns the whole ; each has a right to insist, as against his copartner, that the partnership property shall be applied to discharge the partnership debts.

So as to the debts. Each partner is liable for them in *solido;* his individual estate, as well as that of the partnership, is liable for them to the uttermost farthing.

But it is a principle of equity too firmly established to be shaken, that partnership property must first be applied to the payment of partnership debts, and individual property to individual debts, and the partners and creditors, collective and individual, have a right to insist on the application of this principle.

The firm being unable to pay its debts, one of the partners becomes a petitioner in insolvency. Among his creditors he must undoubtedly enumerate in his schedule the creditors of the partnership, for he is liable to each and all of them. In putting in, then, the creditors of the firm as claimants on his estate, and bringing them before the Court to answer his petition, he must necessarily offer them the partnership property. They have a special right to be paid from it, and to claim its application to their debts, and his individual creditors have a right to insist they shall exhaust it before looking to his individual property. Both classes of creditors have a right to insist upon and try contradictorily, as against one another, their respective rights and priorities, as against the two funds.

The number and variety of conflicting claims which may, and in practice do arise, between various individuals of the two classes of creditors, is almost without limit; and it is clear no Court can proceed to administer justice, in such a case, unless it has before it all the parties interested, and in its hands all the property which is to be administered.

Hence, in cases of bankruptcy or insolvency, the law, in taking upon itself the administration of any part of the property, necessarily and for the purposes of such administration, grasps all.

26

The assets of an insolvent copartnership constitute in equity a trust fund for the equal benefit of all the creditors. Egberts *v.* Wood, 3 Paige Ch., 517. Havens *v.* Hussey, 5 Ib., 30. Deming *v.* Cotts, 3 Sanf. S. C. Rep., 290. Hayes *v.* Heyer, Ib., 293. Hitchcock *v.* St. John, 1 Hoff. Ch., 511. Inness *v.* Lansing, 7 Paige, 583. Kirby *v.* Schoonmaker, 3 Barb. Ch., 49. Dillon *v.* Horn and Moriney, 5 How. Pr. R., 35. Nicholson *v.* Leavitt, 4 Sanf., 281. If this be true, then it follows—

1. That on the insolvency of the partnership, one partner petitioning in insolvency must necessarily bring the partnership assets into Court for the partnership creditors; for otherwise the creditors of the firm, and of himself individually, can never work out their conflicting equities and rights as between themselves.

2. That independent of any insolvent law, either partner has a right to insist upon and compel the equal distribution of the assets of an insolvent firm among its creditors. And as the laws of California forbid the doing of this by any other means than by means of the insolvent law, he must have the right to accomplish that through the medium of the insolvent law.

We propose to look, in conclusion, at the authorities which may be found applicable to the case, or where questions of a like character have been decided.

See Hawkey *v.* Ganatt, 1 Ves , 236. Baker *v.* Goodair, 11 Ib., 78. Dutton *v.* Morrison, 17 Ib., 193. Matter of Wail, 1 Jac. and Walk., 605. Murray *v.* Murray, 5 Johns. Ch., 65. Case of Nicholas G. Norcross, 5 Law Rep., 498. Ib., 402, 272. Fisher *v.* Currier, Ib., 222. Thompson *v.* Thompson, 4 Cush., 172. 9 Rob. La. R., 372.

Is the Act of May 4, 1852, for the relief of insolvent debtors, and protection of creditors, constitutional ?

The Constitution, Art. VI., clearly intends to constitute the District Courts throughout the State as the Courts of original general jurisdiction, just as the Supreme Court is constituted the Court of general appellate jurisdiction. The Justice Courts and County Courts on the other hand, were designed to be Courts of limited and special jurisdiction. The principles of construction to be applied in ascertaining the

powers which may or may not be conferred on each by the Legislature, are widely different.

The words "law and equity," in sec. 6, are not words of limitation; they are not inserted as a *restriction* of the jurisdiction of the District Courts, but were used as the largest and most comprehensive terms in which jurisdiction could be conferred; they assume that every case which can possibly arise, whether civil or criminal, must be included within, and covered by them. The words of restriction or limitation in the section, are these: " In civil cases, where the amount, &c., exceeds two hundred dollars;" the intention being to distinguish between the civil and criminal jurisdiction of the Court, leaving the latter entirely unlimited, but fixing as to the former an amount below which, (like the King's Courts in Westminster Hall, and the higher Courts of the various States,) the Court should not take cognizance of private controversies. The punctuation of the sixth section in the printed volume is faulty, but the Constitution should be construed with reference to its general scope and intent, and the design of its framers, rather than by reference to points and commas, frequently introduced by a careless engrossing clerk or printer.

The intention here evidently was to enact that the District Courts shall have general original jurisdiction in all cases, whether of legal or equitable cognizance; in criminal cases unlimited—in civil cases where the amount involved exceeds two hundred dollars. And unless it be so interpreted, a large class of cases will be found, jurisdiction of which cannot constitutionally be vested in *any* Court—as *mandamus, quo warranto*, prohibition, &c.

But even conceding to the language the sense claimed for it by the defendants' counsel, the reasoning in Parsons v. The Tuolumne Water Company, on the limited jurisdiction of County Courts, is not applicable to the District Courts, which are plainly of general jurisdiction. Section 9, of Art. VI, expressly forbids jurisdiction to be granted to the County Courts, except in the special cases pointed out. No such limitation of the jurisdiction of the District Court exists.

Besides, bankrupt jurisdiction and proceedings thereon, (including the discharge of the bankrupt,) have, for over three centuries, formed part of the jurisdiction of the Chancellor in England, whence we have borrowed our common law and equity system. And the terms "law

and equity," as used in the Constitution, must be understood or construed with reference to that notorious historical fact, and must be construed, too, liberally and fairly—not narrowly confined to what is strictly *common* law.

*Nathaniel Bennett* and *Jo. G. Baldwin* for Respondents.

The law of California expressly denies to a banker the benefit of the insolvent law. It gives him no right to come in for any purpose. The benefit of the Act means the whole benefit, for any purpose, and "benefit" is not gain. It means "privilege," and privilege of distribution as much as discharge. The whole scheme of the Act is an *insolvent*, not a bankrupt law. See 8 Wend., 339. Every provision looks to the discharge of the debtor; and the disposition of the property, though equally important, yet is merely ancillary to this substantive purpose.

It is not for us to show that a banker cannot come in for the purpose of having his effects distributed; but it rests with the other side to show that he can come in.

This being a special and summary proceeding, and limited in its scope and effect, it follows, that they who set up a power or right must show affirmatively the power or right. Nothing is presumed in favor of such a proceeding, but every thing must be proved.

There is no single provision of the statute which gives the power to come in for distribution where it is denied for discharge; but the whole phraseology points, and expressly refers, to the discharge, as part of the prayer in all cases—as part of the inquiry, and part of the result of the investigation.

The Act provides for a stay of "*all* proceedings on the part of creditors;" and if it is conceded that there can be no "*discharge*" as to bankers: it is absurd to hold off the creditors, when they are entitled to judgment, &c. The stay is not an injunction against the fund to be distributed—the Court would always protect its own fund—it is a stay of suits, arrest, levy on unscheduled property, &c.

The Act requires the insolvent to sue, as he has not compounded, defrauded, &c. Now if this is for the benefit of the creditor, why should the creditor not get the money the debtor is willing to pay, merely because he has put a creditor out of the way by compounding

with him; or why should *the creditor* be prejudiced by the fraud of the debtor, if the debtor is willing to pay him now.

Look at the absurdity of a law for the benefit of the creditor, to be worked out by the debtor, and on his relation; and the debtor a defaulter tabooed and outlawed by the Act!

If this were the privilege of the creditor, the law would put the remedy in the hands of the creditor. The notice and summons are to be *against* the creditors to show cause why money should not be paid them? for which they are to do nothing and give nothing.

There are forty-nine sections of a law to enable a debtor to distribute his effects among his creditors, when he would have done it himself without any law.

That one partner has no right to go into insolvency for the firm or firm assets.

1. Because the statute does not allow any party to come in by attorney or agent.

2. Because this is not a bankrupt law; and no case can be found where an insolvent ever was known to take the assets of a firm into insolvency; the giving in of his property being only a matter connected with his discharge; and the bankrupt Acts being remedies for the creditor, and therefore carrying in the property in such a manner as to be most beneficial to the creditor.

3. Because the assignees take not by statute, or an Act of bankruptcy, but merely by assignment; and the validity of the assignment depends on the power of the assignor over the subject; and one partner cannot make an assignment (general) which has the effect of dissolving the firm. See Holcomb's Leading Cases on Commercial Law, note to case of Harrison *v.* Sterry.

4. He cannot make an assignee or agent: For as to his partner, he is only agent, and cannot delegate his authority; for a delegated power cannot be assigned. And he cannot give authority to firm creditors to elect a trustee or agent. Such a power is not implied and not given.

5. Even if one partner can make a general assignment, he cannot do so for the purpose of insolvency of the firm, for the authority is only implied; and it cannot be supposed or inferred that a man has given power, which, if the question were directly presented, the other party would refuse. Who would consent, on the failure of one partner, to

suffer him to put all the assets into an insolvent Court—the other partners standing out, liable to pay the debts, and having no control of the funds to pay them, and suffering the discredit of bankruptcy ?

6. The assets of the firm cannot be put in for distribution, because the statute requires the insolvent to " swear that he has not compounded or acted fraudulently," and the insolvent could not swear for his partner, nor has Woods done it—the effect being upon the assets, the oath must be by all owning them.

7. The doctrine of bankrupt law does not apply—because that is regulated by statutes (and is a remedy for creditors) applying to a class of cases a law of commercial regulations founded upon a system wholly foreign and peculiar, having but little analogy to our insolvent system.

8. The difference between a bankrupt and an act of insolvency is this: " a commission of bankruptcy is an execution, and the act of bankruptcy is an assignment; but under *the insolvent law the assignment* conveys the property.

The District Court has no jurisdiction over proceedings in bankruptcy. The Act conferring such jurisdiction is unconstitutional.

The District Court has original jurisdiction, in law and equity, in all civil cases where the amount in dispute exceeds two hundred dollars, exclusive of interest.　Const. Cal., Art. VI, § 6.

Proceedings in bankruptcy in England are not proceedings in equity.

The jurisdiction of the Lord Chancellor in bankruptcy is distinct from that of the Court of Chancery.　6 Vesey, 782.

Proceedings in Bankruptcy are not proceedings in Equity.　3 Young & Jarvis, 433.

The exercise of bankruptcy jurisdiction is personal in those to whom it is interested.　2 Woodeson, 420.　3 Black., 428; note 7 by Chitty.

All the Chancellor's jurisdiction in bankruptcy is derived from the Legislature.　The term bankrupt is unknown to the common law.　2 Maddock's Ch. Pr. marg. p. 589.

" We have fetched," says Lord Coke, " the name, as well as the wickedness, of bankrupt from foreign nations."　2 Inst., 277.

In *ex parte* Lund, (5 Vesey, 782-3,) the Chancellor says, that he acted in bankruptcy under a special commission; that is, special author-

ity from the Legislature, distinct from *the equitable authority* of the Court of Chancery.

The first statute of bankruptcy (34 and 35 Henry VIII, C. 4,) gave the jurisdiction in bankruptcy to the Chief Justice, as well as to the Chancellor. 2 Mad. Ch. Pr., 589, 590, marg. p. 2 Stephens on Equity Courts, 759.

Proceedings in the English bankruptcy system are in no respect analogous to proceedings in a case in equity. 2 Chitty Black., 480, *et seq.*, marg. page. 2 Mad. Ch. Pr., 589 to 593, 2 Stephens' Comm., 189 to 225.

The conclusion is, that proceedings in bankruptcy in England cannot be regarded as constituting a case in equity.

To give the District Court jurisdiction, there must be a civil case in law, or a civil case in equity, and in either event the case must present an amount in dispute of at least two hundred dollars. We contend as follows:

I. Proceedings in Bankruptcy are not a civil case in law. This requires no comment, for no one can endeavor to support the affirmative.

II. They are not a civil case in equity.

First, They do not constitute what is termed a " case." The term " civil case," means the same as " suit," " action," " cause." (Bouvier's Dic., " Case." Burrill's Dic., " Case.")

Bankruptcy is not one of the grounds of equity jurisprudence. There is no such head in Story's Equity Jurisprudence.

In the division of suits into legal and equitable, proceedings in bankruptcy belong to neither class.

An action, or suit, or case, either in law or equity, consists of the following successive proceedings, which, to use an expression of this Court, may be regarded as the " framework" of the action, to wit: process, pleadings, trial or hearing, judgment or decree, execution. Proceedings in bankruptcy have not one of these characteristics of a suit or action.

The forms of proceedings in bankruptcy are so unlike the forms of a suit in law or in equity, that in the language of Chief Justice Marshall, (6 Wheat., 425; 5 Cond. R., 127,) a mere inspection of the record

gives decisive information of the character in which the Court sits, and consequently of the "extent of its powers."

In Traver v. Traver, (3 How., Pr. Rep., 353,) the Court says, "The proceedings in question" (statutory proceedings for the partition of land) " are commenced by statutory petition, and are, therefore, neither an action at common law nor a suit in equity."

Some wrong or injury must have been committed, threatened, or suffered, before an action or suit can be brought.

Remedies are of two classes. First, Those which are administered in Courts of Common Law; and second, Those which are administered in Courts of Equity. (1 Story's Eq. Juris., § 25.) The former are what the Constitution calls civil cases in law, and the latter, civil cases in equity.

Bankruptcy is not an equitable right, nor is the remedy an equitable remedy. The right and the remedy are both created by statute, and in pursuing the statutory right, the statutory remedy alone can be resorted to. 2 Jones' Pa. R., 362. 14 Serg. and R., 165. 2 Penn., 463. 16 Mass., 65. 1 Met., 130. 1 How., 379.

Cases of this description are the special cases of the Constitution, over which the County Courts have jurisdiction.

The State Legislature has no power to enact a bankrupt law; the effect of which is to deprive A of his property, and transfer it to B. Dec. of Rights, sec. 8, latter clause. Taylor v. Porter, 4 Hill, 140. McKean v. Devries, 3 Barb. S. C., 198. Touawanda Rail Road Co. v. Manger, 5 Denio, 255, 264. White v. Scott, 4 Barb. S. C. R., 59. Holmes v. Holmes, Ibid., 298. The People v. Supervisors, Ib., 64.

MURRAY, C. J., delivered the opinion of the Court. BRYAN, J., concurred.

Before proceeding to examine the questions raised in this case, we think it but justice to commend the able manner in which the cause has been presented to our consideration.

It is not our purpose to examine the various points which have been argued at bar, but to come at once to a single inquiry, which we consider the turning point of the case, and decisive of the whole controversy ; that is, *the right of the appellant to go into insolvency in re - lation to debts contracted as a banker.*

For this purpose, our statute, though not strictly speaking a Bankrupt law, may be treated as such, or as an Insolvent Act, or both, and the question is therefore narrowed down to a simple inquiry of the intention of the Legislature, to be drawn from the Act by settled rules of construction.

The thirtieth section of the Act of May fourth, 1852, entitled " An Act for the Relief of Insolvent Debtors," provides that " all insolvent debtors, owing or accountable in any manner for public funds, or property of whatever nature or kind; all unfaithful depositaries; all such as refuse or neglect to pay up all funds received by them, as bankers, brokers, commission merchants, or for money, goods or effects, received by them in a fiduciary capacity, shall be denied the benefit of this Act."

The petition of Woods states that the firm of Adams & Co. were, at the time of the act of insolvency, engaged in banking and express business, and that he was also engaged in the business of farming.

It is now contended, admitting that the appellant can not be discharged from the obligation of the debts contracted in the business of banking, that he may be discharged as to other debts, not expressly prohibited in the thirtieth section, and may apply under the provisions of the Act to have the assets of said firm distributed, rateably, among the creditors, without proceeding to a final discharge.

In support of this proposition, it is said that the Act, by its title, purports to be an Act as well for the protection of creditors, as for the relief of debtors; and perhaps the greatest protection which can be afforded is by requiring, or enabling, the insolvent to throw all his assets into one common fund, for the benefit of all his creditors; that if this can not be done, in a case where liabilities have been contracted in a banking business, or in a fiduciary capacity, then a large number of creditors will be entirely remediless. And, second, that the Act does not forbid the insolvent from applying for a distribution of his property, but only denies a discharge.

It is well settled, that the title of an Act is no part of the law itself; although it may be referred to, in cases of doubt, to ascertain the intention of the Legislature. The Act now under consideration has already received a judicial examination at the hands of this Court, in

27

the case of Chever *v.* Hays, 3 Cal. 472, in which it was determined that it was the intention of the Legislature to do away with all voluntary assignments. Acting upon what we believe to be the better opinion of jurists, and unrestrained by any former decisions of this Court, we cheerfully avail ourselves of the opportunity thus afforded by the statute, of removing this blot from our jurisprudence, and strangling forever this ready accessory of fraud and dishonesty. Since that decision, the right, as it existed in common law, of a debtor in failing circumstances, to assign his property for the benefit of all, or a few of his chosen creditors, has never been asserted, within our knowledge, in the Courts of this State.

This we think is the only substantial protection secured to the creditors ; for, as we shall show presently, save the prohibition which destroys the common law right that enabled the debtor to assign his property to whomsoever he pleased, no security or right has been guaranteed to the creditor which he did not possess before, and might have asserted in a court of law or equity; while the relief sought to be given to debtors, consisted in protecting them from harassing and expensive litigation, and in a final discharge from their liabilities in case of a strict compliance with the provisions of the statute.

In determining whether the present case comes within the statute for any purpose, we assume, that proceedings in insolvency are not *stricti juris,* either proceedings in law or equity, but a new remedy or proceeding, created by statute, the administration of which has been vested in the District Courts of this State, independent of their common law or chancery powers as courts of general jurisdiction. And, second, that whenever a new right is created by statute, and the enforcement of such right is committed to a court (even) of general original jurisdiction, that such court *quoad hoc* is an inferior court, and must pursue the statute strictly.

Testing this case by these propositions,—and admitting for the sake of argument that the prohibition contained in the thirtieth section, does not extend to the profession, but only to the subject matter of the insolvency,—how stands the case ?

The appellants' petition shows upon its face that a portion of the indebtedness, from which he seeks to be discharged, has been con-

tracted as a banker; thus showing a case within the provision of the thirtieth section, and expressly negating the jurisdiction of the court; for it must be borne in mind, that the Act requires the petitioner to set forth the amount of his indebtedness, how contracted, etc., together with a prayer for a discharge.

Now, the District Court, acting as a court of limited or inferior jurisdiction in these matters, must first ascertain, that the person, the subject matter, and the relief sought, are within the statute, before its jurisdiction will attach. How, then, can the Court be said to have jurisdiction for any purpose, when the first step taken in the proceeding shows the party to be beyond the pale of the Act, and the subject matter beyond the jurisdiction of the Court?

It is contended that the Court below could not determine the question, except upon a complete investigation of the whole case; and this Court has been referred to other sections of the statute which deny the benefit of the Act to those insolvent debtors who may have been guilty of fraud, etc.; and we are asked how the Court is to ascertain these facts, except by judicial inquiry? This position may be illustrated by the example of a party seeking the aid of a Court of Chancery, and confessing his own turpitude in his bill. In such a case, would it be contended for an instant, that a Court of Equity would listen to the application, and wait for a judicial ascertainment of the facts thus alleged? On the contrary, the door of justice would be closed upon him, and he would be told that equity had no jurisdiction in a case confessedly fraudulent and immoral.

In the cases enumerated in the sections referred to, the Court would be bound to take jurisdiction; it not appearing upon the face of the proceedings that the party had been guilty of any act which would prevent such jurisdiction from attaching; and having once obtained possession of the whole fund, it would be competent for a Court of Chancery to proceed and distribute, even if it should afterward appear in the course of judicial investigation, that the insolvent had been guilty of some act which prevented his discharge.

It is difficult to adduce arguments in support of a proposition which we consider so clear. Strip the case of all the embarrassing questions

which have been thrown around it in its progress in the Court below, and in our opinion it scarcely admits of a reasonable doubt.

The mere right of discharge cannot properly be said to be the only relief resulting to the debtors. The exemption from arrest upon mesne or final process, as well as from costs and expenses of harrassing litiga tion, are certainly to be considered a relief to the insolvent, who may be upon the very threshold of a prison to answer with his body for debts fraudulently contracted.

It will not do to say that the only benefit secured by the Act to creditors, is the permission allowed to the debtor to file his petition, and compel his creditors to come in and distribute the assets among themselves. This voluntary permission can in no just sense be said to afford any protection to the creditor, and as already said, he acquires no other rights, by the Act, with the exception of protection against all voluntary assignments, than he possessed before; for he might then, as now, file a creditor's bill, or pursue his ordinary legal remedies.

We see none of the practical evils resulting from this construction, which have been anticipated by counsel. The remedies of the parties in law and equity remain the same: either one of the partners of an insolvent firm may file his bill, obtain an injunction and receiver, and have the assets distributed.

The Legislature for some good cause have thought proper to exclude this class of indebtedness from the operation of the Act, leaving the parties to the ordinary remedies. In so doing, they seem to have acted in consonance with the spirit of the age, as well as the Constitution of this State, which expressly discountenances contracts of this character.

If the power to discharge the insolvent is denied, in this class of cases, jurisdiction for any other purpose would seem inharmonious to the general scheme or policy of the Act, which looks to the final dis- charge as the object to be worked out, and can not be said in these cases to be of any protection to the creditor, by simply permitting the debtor to throw his assets into insolvency for distribution, if he thinks proper to do so; for it must be borne in mind that the Act makes no provision for an involuntary surrender, and the mere permission of an exercise of volition on the part of an insolvent debtor, will be found to amount to no protection at all, particularly where the benefits of the

Act are denied, and the real incentive to an honest surrender of all his assets is thus removed.

It has been supposed that the decision of this Court in the case of Chever *v.* Hays, 3 Cal. 472, sustained the right of a party to go into insolvency under this Act, without proceeding to a final discharge. On examination of that decision, it will be found that the question under consideration was not raised, and the language of the Court was intended to apply to those cases where the petitioner was entitled to his discharge, but did not see proper to prosecute his rights further than a distribution of his property; which might be done, as I know of no power that a Court possesses to compel the party to his discharge against his wishes.

For these reasons we are of opinion, that the Court below had no jurisdiction in the matter of the application of I. C. Woods in insolvency, it appearing upon his petition that a portion of the indebtedness therein set forth was contracted in the business of banking, and that the whole proceeding was *coram non judice* and void.

Judgment affirmed, with costs.