## ADAMS vs. HASKELL.

*Fourth District Court for San Francisco Co., December,* 1857.

RECEIVERS—ACCOUNTS, POWERS, AND LIABILITIES OF.

Receivers' accounts should show the amount of property and funds received, as well as disbursements made; and when presented should be verified under oath, as should also the accounts of assignees appointed under the insolvent law of this State.

If a receiver has made a disbursement without the order of the court, the *onus* is upon him to prove that it was necessary, or resulted beneficially to the estate, before it will be allowed.

If a receiver prosecutes suits for debts without an order of court, and fails to recover, as a general rule he will not be allowed his costs and expenditures out of the fund in court.

A receiver should not employ as his counsel the attorney of either of the parties to the suit.

On report of *G. A. Grant, Esq.,* in the matter of the petition and claim of *Cohen, Roman & Jones,* assignees appointed in insolvency, of the assets of *Adams & Co.* for services and disbursements.

*Shafters, Park & Heydenfeldt,* for plaintiff.

*S. H. Dwinelle,* for defendants.

*Hoge & Wilson,* for Cohen, Roman & Jones.

HAGER, J.—At or about the time this action was instituted, one of the petitioners, *A. A. Cohen,* was appointed the receiver therein, and entered upon the performance of the duties of his office. Subsequently *Woods,* on behalf of himself and his co-partners, *Adams & Haskell,* filed in this court a petition in insolvency, and the petitioners herein, said *Cohen, Roman & Jones,* were appointed assignees, and as such succeeded *Cohen* the receiver. Both appointments were made in and under the authority of this court: afterwards, the supreme court held that this court had no jurisdiction in the matter of the proceedings in insolvency, inasmuch as it appeared by the insolvents' petition, that a portion of the indebtedness sought to be discharged, had been incurred as bankers. (*Cohen vs. Barrett,* 5 *Cal.,* 195.) The proceedings in insolvency were consequently void *ab initio.*

*Cohen* having been regularly appointed receiver, continued as such notwithstanding the proceedings in insolvency, until his removal from

office. *Roman & Jones,* inasmuch as they entered upon the performance of the duties under the authority of the court, received the funds in the custody of the court, must, in conjunction with *Cohen,* be regarded as *quasi* receivers, until the decision of the supreme court, July term, 1855, to which I have just referred. It then follows that *Cohen* as receiver, and *Roman & Jones* as *quasi* receivers, became custodians of the property, &c., in the custody of the law in this action, and are bound to account to this court, and are entitled to its protection so far as they have acted under its authority, or within the powers ordinarily exercised by receivers, or specially conferred upon them by order, or by operation of law. Their accounts either as assignees or receivers, containing a full account of receipts and disbursements, should be filed and passed upon in like manner as if their appointment had been regular.

Receivers' accounts should show the amount of funds and property received, as well as disbursements made, and when presented should be verified under oath. This is the chancery rule, and our insolvent law has the same provisions in regard to the accounts of assignees under that act. 3 *Dan. Ch. Pr.* 1996.

The accounts in this case as reported by the referee, contain no statement of funds, &c., that came to the hands of the petitioners, nor are they verified. It only contains items of disbursements and claims for services; these are all, with one or two exceptions, allowed as claimed, and amount to the sum of $43,492.80 ; of this $15,000 is for the services of the petitioners, $5000 being allowed to each, and the balance for expenses and disbursements.

It has heretofore appeared in the proceedings in this action, that the petitioners after their appointment, with the consent of the court, took charge of the funds and property in its custody belonging to this suit, and after being adjudged guilty of contempt, delivered a portion of the same upon the order of the court, to the present receiver, *Naglee.* It also appears by this report that *Naglee* received from petitioners a certificate of deposit for $100,000, as security for the payment of that sum. Have petitioners accounted for those funds ? They went into their possession as *quasi* receivers, and they should account for them upon a settlement and discharge. If they have delivered them over to the new receiver, that fact should appear by the accounts and the

report of the referee ; but they contain no information on the subject.

The report of the referee allows to petitioners the sum of $43,493.80, but is silent as to the amount of money received by them. The question then arises, how is the sum allowed to be paid ? From out of the funds still remaining in court, or have petitioners appropriated for that purpose, a portion of the moneys that came into their possession ? Have petitioners reserved this sum to cover their disbursements ? These are questions that I am unable from anything that appears of record, to determine. It seems to me, however, that should I confirm this report, the amount allowed would necessarily become a charge upon the fund in court, and yet the court would be without information as to the true state of petitioners' accounts. I have heretofore announced that the charges as made or reported upon, against the fund, exceed the amount in court, and until the sum on hand to be distributed is ascertained, a distribution cannot well be made. I heretofore set aside a portion of the fund, supposing that there was sufficient remaining to pay all claims against it, and ordered that it should be distributed among the creditors, which order was removed to the supreme court, and at the last July term reversed, all proceedings in this court in the mean time having been stayed by the order of that court.

The charges reported and those claimed against the fund, may be stated as follows :

1. Report of *Mr. Cleary* on claim of *Mr. Stanley,* for
   fee, set aside but undisposed of,          $20,000 00
2. Report of *Mr. Grant* in favor of *Cohen,* heretofore
   passed upon,          28,704 33
3. Report of *Mr. Grant* in favor of *Cohen, Roman &*
   *Jones,* now under consideration,          43,493 80

         Total amount,    $82,198 13

Now by account of receiver *Naglee,* and report thereon
     by *Mr. Yale,* the entire sum in court, after deduct-
     ing the disbursements allowed the receiver, exclusive
     of allowance for his services, amounts to only,    58,385 50

Showing a balance against the fund of          $33,812 63

The two reports of *Mr. Grant*, and those by *Messrs. Haight & Yale*, have come in recently, or within a few weeks past. They are long and voluminous, and I have disposed of them as soon as the other business of the court allowed me time to give them the consideration which their importance demanded. When I ascertain the amount of funds in court to be distributed, I am prepared to make a decree. In the meantime, if any party thinks the fund unsafe, I will make an order that it be specially deposited until it is required for distribution.

By his former report *Mr. Grant* allowed *Mr. Cohen* $10,000 for services, and $18,704.33 for expenses, &c.; by this one, he allows him $5000 more for his services, and to *Roman* and *Jones* each $5000, and for their expenses $28,493.80, making altogether an allowance to the three for about five months' services, of               $25,000 00
And for their expenses, &c.,                              47,198 13

Showing a gross expenditure of                       $72,198 13

The amount to be allowed for services not having been referred, it is not necessary to consider it, and it only remains to consider the disbursement and expense account. When I set aside the report in favor of *Mr. Stanley*, I referred to and announced some general principles of law by which this court would be governed in making allowances for the expenses, &c., of receivers. That matter having been carried to the supreme court and sustained, I have seen no reason to change the views then expressed. Receivers may at all times protect themselves by an order of the court, in making any expenditure. If they proceed without it, the *onus* is upon them to show that the expenditure was necessary or has resulted beneficially to the estate, before it should be allowed. If a receiver prosecutes suits for debts without an order from court, and fails to recover, he will not be allowed his costs and expenditures out of the funds in court. *Edwards on receivers*, pp. 4, 117, 159, 530. *Smith on receivers*, 166.

The referee has neglected to report the testimony as was required by the order of reference, and I have no legal evidence before me to determine the validity of the allowances made by the referee. By the minutes of the referee, it seems the items of disbursement were generally supported by the testimony of those who received the money, and it does not appear that the larger portion of those allowed were made

by order of court, or were necessary or beneficial to the estate. A great proportion appears to have been paid to various lawyers, among them the attorneys of the plaintiff and of the defendants in the action, for all of which I am unable to find any reason for charging them against or paying them out of the fund. Heretofore I held that a receiver should not employ as his counsel the attorney of either of the parties; this, for obvious reasons, is a salutary rule, and yet the petitioners employed the attorneys of plaintiff and defendants, as appears by the report, and paid them large fees. I think that about $13,000 is claimed and allowed as paid to lawyers, yet it does not appear that any of the suits resulted favorably to the estate or what became of them.

It also appears that petitioners have charged and had allowed to them, for which I can find no sufficient authority, a large amount for clerks, porters, agents, &c. They had three regular clerks, one, *Mr. Robie*, at a monthly salary of $400, and the others, *Messrs. F. A. Cohen* and *Bowne*, at $250. To *Robie* alone appears to have been allowed for salary and expenses, $2435, of which sum $500 was for extra services while at the same time it seems he was an *employé* of the Pacific Express Company.

But I deem it unnecessary to review the report in detail. In form it is defective, and even should this be waived, its substance is such that I feel unwilling to give it my approval. Should I confirm and adopt it, it might entitle petitioners to a claim upon the fund in court, which would nearly absorb the balance as reported by *Mr. Yale*, without information being before the court of the amount of funds justly chargeable against petitioners, or any satisfactory evidence of the true amount petitioners are entitled to, for expenses and disbursements.