[No. 1262.]

L. B. FRANKEL & CO. v. THEIR CREDITORS, MARIE
SUIZE, APPELLANT.

INSOLVENT DEBTORS—STATUTE CONSTRUED—ADOPTED FROM ANOTHER
STATE, HOW CONSTRUED—JURISDICTION OVER BROKERS.—Section
30 of the insolvent act, (Gen. Stat. 3874,) denying to certain persons
the benefit of the act, was adopted from the insolvent law of Califor-
nia, where it had previously been construed as denying to the insol-
vency court jurisdiction over insolvents of the class therein specified.
The California construction being based on the policy of its laws to
procure the discharge of insolvent debtors, *Held*, that the main pur-
pose of the Nevada insolvency law being the ratable distribution of

the insolvent's property among his creditors, and the reasons for the California construction of section 30 not existing in Nevada, the adoption of the statute was not an adoption of this construction, and the court was not thereby denied jurisdiction over insolvents of the class named, to wit, brokers.

IDEM—ORDER TO SHOW CAUSE —APPEARANCE BY ATTORNEY.— Section 33 of the insolvent act provides that "no person can apply for or receive the benefits of this act through an agent or attorney in fact." Section 43 provides for practice on the return of an order to show cause similar to that in civil actions. *Held*, that on the return of an order to show cause why the debtor should not be adjudged insolvent, the appearance of respondent may be made, and the subsequent proceedings conducted, by an attorney at law.

IDEM — VOLUNTARY APPEARANCE BY ATTORNEY — NON - RESIDENCE — JURISDICTION.—Where a non-resident member of a partnership was ordered to show cause why he should not be adjudged insolvent, and he voluntarily appeared by an attorney, and consented to an adjudication of insolvency, *Held*, that the court acquired jurisdiction over both his person and property.

APPEAL from the District Court of the State of Nevada, Storey County.

RICHARD RISING, District Judge.

The facts are stated in the opinion.

*Robt. M. Clarke*, for Appellant:

I. Proceedings in insolvency are not *stricti juris*, either proceedings at law or in equity, but special proceedings, a new remedy created by statute, the administration of which is vested in the courts independent of their common law or chancery powers. In such proceedings the court must pursue the statute strictly, and its jurisdiction must clearly and affirmatively appear. (*Cohn* v. *Barrett*, 5 Cal. 195; *McAllister* v. *Strode*, 7 Cal. 430; *McDonald* v. *Katz*, 31 Cal. 169; *Meyer* v. *Kohlman*, 8 Cal. 46; *Whitwell* v. *Barbier*, 7 Cal. 54.)

The jurisdictional facts must be set out in the petition. (*Friedlander* v. *Loucks*, 34 Cal. 18; *Bennett* v. *His Creditors*, 22 Cal. 40.)

II. Generally a copartnership may avail itself of the insolvency act; but to do this all the members must be entitled to the benefits of the act and be brought in to join the proceedings.

Concessions must be made of the separate as well as joint property; and individual debts must be scheduled and individual creditors brought in. (Gen. Stat. 3891, 3845, 3846, 3847 3850.)

From the face of the petition it appears that the insolvents are partners, and that two only of the five members are insolvent, or join in the proceedings, or surrender their effects. The petition therefore fails to show a case of which the court has jurisdiction. (Gen. Stat., 3845, 3847, 3848, 3850, 3891; Bump on Bank. Secs. 778, 779, 780; *Meyer* v. *Kohlman,* 8 Cal. 44; *Hanson* v. *Paige,* 3 Gray, 239; *Dearborn* v. *Keith,* 5 Cush. 224; *Armstrong* v. *Martin,* 57 Md. 397.)

III.    L. B. Frankel, one of the partners, was not a resident of Storey county or of Nevada, and therefore not entitled to the benefits of the act. (Gen. Stat. 3846; *Phillips* v. *Newton,* 12 R. I. 489; *Claflin* v. *Beach,* 4 Met. 392.) Neither the person nor the property of L. B. Frankel was within the jurisdiction of the court or subject to its process.

IV.    It appears from the petition that petitioners are "brokers," and brokers are expressly denied the benefits of the act. (Gen. Stat. 3874; *Cohn* v. *Barrett,* 5 Cal. 195; *Meyer* v. *Kohlman,* 8 Cal. 47; *Sanborn* v. *His Creditors,* 37 Cal. 609.)

V.    The debts set out in the schedule were contracted in a fiduciary capacity, and for this reason petitioners are not entitled to the benefits of the act. (Gen. Stat. 3874; 1 Abb. L. Dic. 494; *In re Kimball,* 6 Blatch. 292; *Lencke* v. *Booth,* 47 Mo. 385, 388; 4 Am. Rep. 326; Bump Bank. 744; *Markham* v. *Jaudon,* 41 N. Y. 235.)

VI.    The insolvency act of Nevada was borrowed from California, and had been interpreted by the supreme court of that state before the legislature of Nevada adopted it. (Gen. Stat. 3874; Wood's Dig. 1860, p. 496, Sec. 2660.) In adopting the California statute the legislature of Nevada adopted the California construction of it. (Cool. Con. Lim. 52; *Williams* v. *Glasgow,* 1 Nev. 533; *McLean* v. *Abrams,* 2 Nev. 199; *State* v. *Robey,* 8 Nev. 312.) The California cases are authority and the question *res judicata.*

VII.    The court having no jurisdiction, its orders are absolutely void. They neither bind nor bar anyone. They neither confer nor defeat rights. They are utterly without effect. (*Cohn* v. *Barrett,* 5 Cal. 195; *Meyer* v. *Kohlman,* 8 Cal. 47; *People* v. *Shepard,* 28 Cal. 115; *Hahn* v. *Kelly,* 34 Cal. 391; 94 Am. Dec. 742; Freem. Judg. Secs. 117, 118.)

*M. N. Stone* and *R. S. Mesick*, for Assignee and Creditors.

I.   An insolvency proceeding by a debtor against his creditors is in all its essentials a case or suit at law wherein the
demands in controversy are the debts of the insolvent, from
which he demands, against his creditors, a judgment of discharge.

The insolvency act, in providing that the district court only
shall have jurisdiction in insolvency cases, conferred· no new
jurisdiction on the court; and had it provided only that any
court having jurisdiction should hear and determine such controversies, the district court, under its constitutional powers,
would be authorized to try and decide all insolvency cases.
(*In re Oregon Bulletin Co.*, 3 Saw. 531; *In re Comstock*, 3 Saw.
129; *Knickerbocker Ins. Co.* v. *Comstock*, 16 Wall. 268; Gen. Stat.
3887–3891.)

II.   The district court has jurisdiction of the subject-matter
and the parties in the matter of the insolvency of the firm of L.
B. Frankel & Co., and the individuals composing the partnership.

The objections urged by appellant affect the sufficiency of
the papers as pleadings only, and not the jurisdiction of the
court.   (*Bennett* v. *His Creditors*, 22 Cal. 41; *Wilson* v. *Creditors*,
22 Cal. 408.)

III.   The district court has jurisdiction of the parties to the
petition, as well as the other members of the firm.   First—
Because of the residence of the petitioners and the place of
business of the firm.   Second—Because the two members thereof,
absent from the state, voluntarily appeared in the case and
assented to the adjudication, after having waived the service on
them of an order to show cause why they should not be adjudged
insolvents, as provided for in the 42d and 46th sections of the act.
The case at bar is one of both a voluntary and involuntary insolvency or bankruptcy.   Voluntary in respect to the petitioners, and
involuntary as to the other partners, who were required to appear
or show cause therein.   (Bump's Bank. 760, and cases cited; *In
re Noonan*, 10 Bank. R. 334; *Medsker* v. *Bonebrake*, 108 U. S. 70;
*Stewart* v. *Hines*, 6 B. R. 416.)

IV.   In construing the national bankrupt law, the federal
·courts have uniformly held that jurisdiction was acquired of
non-resident partners in proceedings by resident members of

the firm against them by service of an order to show cause, or by their voluntary appearance either in person or by attorney, and an appearance voluntarily made was deemed a waiver of service of the order to show cause. (Bump's Bank. 45, 441, 442; *In re Wyhausen*, 1 Ben. 397; *In re McNaughton*, 8 B. R. 45; Bump. Bank, 477; *In re Penn*, 5 B. R. 30; Stuart v. Hines, 6 B. R. 416; *Chapman v. Brewer*, 114 U. S. 168, 169; 1 Bank. Dig. 527.)

The authority of the attorney, W. E. F. Deal, to appear for the absent partners and assent in their behalf to the proceedings, is presumed until the contrary is shown. (*Hayes* v. *Shattuck*, 21 Cal. 55; *Ricketson* v. *Compton*, 23 Cal. 637; *Garrison* v. *McGowan*, 48 Cal. 592.)

And his authority to enter their appearance and assent to the proceedings cannot be questioned in the appellate court if not objected to in the court below. (*Noble* v. *Bank of Ky.*, 3 A. K. Marsh. (Ky.) 263; *Shroudenbeck* v. *Phoenix F. Ins. Co.*, 15 Wis. 632.)

V. If the firm stood in a fiduciary relation towards its creditors, within the intent and meaning of section 30 of the act, the burden rests on appellant to affirmatively show by the record the existence of such relation. (*Sherwood* v. *Mitchell*, 4 Den. 436.)

The term "fiduciary capacity," employed by the legislature, is inapplicable in cases where brokers purchase and sell stocks or other property for their customers or creditors. It is applied only to cases of technical or express trusts, and not to transactions where the broker has wrongfully converted the stocks or property, or their proceeds, to his own use. Debts contracted by brokers, of the character presented in the record in this case, are not obligations of a fiduciary nature or character. (*Hennequin* v. *Clews*, 77 N. Y. 427; 111 U. S. 676; *Palmer* v. *Hussey*, 87 N. Y. 303, 119 U. S. 96; *Stratford* v. *Jones*, 97 N. Y. 586; *Grannis* v. *Cubbedge*, 71 Ga 582; *Gibson* v. *Gorman*, 44 N. J. L. 325.)

If, as is claimed by appellants, the insolvents in this case are denied by the statute the right to institute and maintain a voluntary insolvency proceedings, and the district court is denied jurisdiction of such proceedings because they are brokers, the statute is upon its face in conflict with these provisions of the federal constitution and laws. Under them,

persons including brokers and bankers are entitled in every state to the full and equal protection of all laws, and to the full and equal benefit of all laws and proceedings, including insolvency proceedings, and if the legislature could legally deny a broker the right to maintain insolvency proceedings simply because he was a broker and for no other reason, it could as well say that no colored person, no person under a certain age, or no person not a native-born citizen of the United States, shall maintain insolvency proceedings or receive the benefits of the act. To prevent such arbitrary discriminations by the legislature of the state, the federal constitutional amendment and statute were adopted, as shown by numerous authorities. (*Santa Clara R. R. Tax Case*, 9 Saw. 183; *Strauder* v. *West Virginia*, 100 U. S. 306; *San Mateo* v. *S. P. R. R. Co.*, 8 Saw. 251.)

*W. E. F. Deal*, for Frankel & Co.

By the Court, BELKNAP, J.:

This is an appeal from orders of the district court, adjudging L. B. Frankel & Co. insolvents, appointing an assignee and staying proceedings. Numerous reasons are assigned for the reversal of the orders, the prominent one being that "the court had no jurisdiction in the premises, because it appeared that L. B. Frankel & Co. were brokers, and the debts and liabilities from which they petition to be discharged were contracted by them in a fiduciary capacity and character." The determination of this point involves an examination of the statute concerning proceedings in insolvency. The act entitled "An act for the relief of insolvent debtors and protection of creditors," approved March 3, 1881, (Gen. Stat. 3845, *et seq.*,) under which the proceedings were taken, is substantially a copy of the California insolvency law of 1852; but after copying this law, which provides only for voluntary insolvency, provision was made in succeeding sections for cases in which creditors could institute proceedings to have their debtors adjudged insolvent and their estates administered. At section 30, which was a part of the California law, it declares: "All insolvent debtors owing, or accountable in any manner, for public funds or property, of whatever nature or kind; all unfaithful depositaries; all such as refuse or neglect to pay up all funds received

by them as bankers, brokers, commission merchants, or for money, goods, or effects received by them in a fiduciary capacity, shall be denied the benefits of this act."

Before the adoption of this section by the legislature of this state, the supreme court of California had construed it as excluding bankers and brokers from the jurisdiction of the insolvency court. (*Cohen* v. *Barrett,* 5 Cal. 195.) It is claimed, under a familiar rule of statutory construction, that the interpretation was adopted as well as the terms of the statute. The views of the California court with reference to the general purpose of the law of 1852 deserve attention. Upon this subject it was said in *Cohen* v. *Barrett,* 5 Cal. 212: "If the power to discharge the insolvent is denied in this class of cases, (bankers,) jurisdiction for any other purpose would seem inharmonious to the general scheme or policy of the act, which looks to the final discharge as the object to be worked out, and cannot be said in these cases to be of any protection to the creditor, by simply permitting the debtor to throw his assets into insolvency for distribution, if he thinks proper to do so; for it must be borne in mind that the act makes no provision for an involuntary surrender, and the mere permission of an exercise of volition on the part of an insolvent debtor will be found to amount to no protection at all; particularly where the benefits of the act are denied, and the real incentive to an honest surrender of all his assets is thus removed."

In *Sanborn* v. *His Creditors,* 37 Cal. 610, the court said: "The statute, as its title imports, was intended for the relief of insolvent debtors and the protection of creditors. The 'relief' and the 'protection' for which it provides, proceed *pari passu.* If the debtor, for any cause, is entitled to no 'relief,' the creditors are entitled to no 'protection,' for they stand in need of none, except such as is afforded by the general laws for the collection of debts. Hence if, upon the trial of an accusation of fraud, the debtor is found guilty, the final judgment is that his discharge be denied, and that he be forever denied the benefit of the laws passed for the relief of insolvent debtors in this state. (Section 23.) With this judgment the entire proceedings terminate, and the relation of the petitioner and his creditors in respect to each other, and to the estate of the former, remain as at the commencement, except that the petitioner becomes liable to the pains and penalties provided in

the twenty-fifth section." *Appel* v. *His Creditors*, 57 Cal. 211, was an appeal from an order made in an insolvency proceeding under the law of 1852. The assignee had received from the sheriff certain moneys belonging to the insolvent. After a trial of issues, the debtor was denied the benefit of the insolvent law. Thereupon the court directed the assignee to return the money to the sheriff. The order was affirmed.

These decisions show the purpose of the California law to have been the discharge of the insolvent debtor; and it was accordingly held that if he could not have the benefit of the law he was excluded from its jurisdiction. The insolvency law of this state proceeds upon a different principle. It provides various cases in which creditors may have their debtor adjudged insolvent, and his estate ratably distributed, while under the California law the debtor alone could inaugurate the proceeding. This feature distinguishes the principle upon which the laws are founded. One has for its object the final discharge of the insolvent; the main purpose of the other is a ratable distribution of his property.

Our statute differs in many respects from the national bankrupt law of 1867, but its purpose is in the main similar. In construing certain provisions of that law, the supreme court of the United States in *Wilson* v. *City Bank* took occasion to consider its general spirit and purpose, employing language applicable in the present case. The court said: "In both classes of cases (voluntary and involuntary bankruptcy) undoubtedly the primary object is to secure a just distribution of the bankrupt's property among his creditors, and in both the secondary object is the release of the bankrupt from the obligation to pay the debts of those creditors. But, in case of voluntary bankruptcy, the aid of the law is invoked by the bankrupt himself, with the purpose of being discharged from his debts as his principal motive; and in the other the movement is made by his creditors with the purpose of securing the appropriation of his property to their payment, the discharge being with them a matter of no weight, and often contested." (17 Wall. 480.)

And that jurisdiction does not depend upon the right of the debtor to receive the benefits of the bankrupt law, we quote from *Van Nostrand* v. *Carr*, 30 Md. 128: "The jurisdiction of the bankrupt court does not depend upon the right of the party ultimately to obtain his discharge. This may be denied him

for various causes enumerated in the law, and can be determined only by facts and circumstances disclosed in the progress of the cause, after the jurisdiction has attached. It is not essential to the jurisdiction that the party shall appear to be entitled to a discharge without the consent of his creditors."

If the objection urged to the jurisdiction be valid in the present case and the California decisions followed, the objection would be good in every case where an insolvent would be denied a discharge, and the great purpose of the law—the distribution of the property of a debtor among his creditors—would thereby be defeated. The view that such a result was not contemplated by the legislature, and that the expression in section 30, "denied the benefits of the act," does not mean a denial of jurisdiction, is, we think, strengthened by the fortieth section of the statute, which, among other things, provides as follows:

"Sec. 40. An adjudication of insolvency may be made on the petition of five or more creditors, residents of this state,   *   *   * setting forth that   *   *   *   a bank or banker, agent, broker, factor, or commission merchant has failed for forty days to pay any moneys deposited with or received by him in a fiduciary capacity, upon demand of payment.   *   *   *"

This is an express grant of jurisdiction. If section 30 be construed as excluding jurisdiction of brokers, the legislature would have created an unreasonable distinction in permitting the creditors of this class of people to place them in insolvency, but excluding brokers themselves from invoking the aid of the law. Jurisdiction would thus be made to depend upon the form of the proceeding. There is no reason for such a distinction in our statute. It is a general rule of statutory construction that when a statute has received a judicial construction, and is afterwards adopted by another state, the construction, as well as the terms of the statute, will be deemed adopted. But the rule is not inflexible.

In *Tyler* v. *Tyler*, 19 Ill. 151, the supreme court of Illinois refused to follow the settled construction received by an English statute, prior to its adoption by the legislature of that state, because the construction was based upon a reason not existing in the state of Illinois. The reasoning of the California decisions is not applicable to our law. Section 30 was incorporated by our legislature into a law essentially different from that of

California. The section stands in an entirely different connection than in the law from which it was taken, and the changed conditions require for it a different construction. (See, also, *Little* v. *Smith,* 4 Scam. 402 ; *Lessee of Gray* v. *Askew,* 3 Ohio 479 ; *Jamison* v. *Burton,* 43 Iowa, 282 ; *McCutcheon* v. *People,* 69 Ill. 601.)

The firm of L. B. Frankel & Co. was composed of five members. The copartnership was adjudged insolvent upon the petition of two of the partners. The proceedings were instituted under section 47 of the insolvency law, which provides :

"Sec. 47. Two or more persons who are . partners in business may be adjudged insolvent, either on the petition of such partners or any one of them ;   *   *   *   in which case an order shall be issued in the manner provided by this act, upon which all the joint stock and property of the partnership, and also all the separate estate of each partner, shall be taken.   *   *   * If the petition be filed by less than all the partners of a copartnership, those partners who do not join in the petition shall be ordered to show cause why they should not be adjudged to be insolvent in the same manner as other debtors are required to show cause, upon a creditor's petition, as in this act provided."

The petition having been filed by less than all of the partners, the order required by the statute was directed to be issued. Before the return-day the partners to whom it was directed appeared by an attorney at law, and consented to an order of adjudication of insolvency. It is urged that the district court did not acquire jurisdiction of these partners upon the theory that there should have been an appearance in person of each of them. Section 33 of the law provides that "no person can apply for or receive the benefit of this act through an agent or an attorney in fact." And section 5 requires the petitioner in insolvency to sign and verify the schedule of his property to be attached to the petition.  But these provisions do not support the objection. The proceeding as to the three partners was compulsory in form. Section 43 provides that at the hearing of the order to show cause " the debtor may demur to the petition for the same causes as are provided for demurrer in other cases by the civil practice act. If the demurrer be overruled, the debtor shall have ten days thereafter in which to answer the petition. If the debtor answers the petition, such answer shall contain a specific denial of the material allega-

tions of the petition controverted by him, and shall be verified in the same manner as pleadings in civil actions, and the issues raised thereon may be tried with or without a jury, according to the practice provided by law for the trial of civil actions." These provisions evidently contemplate that the appearance of respondents may be made and subsequent proceedings conducted by an attorney at law. It is also claimed that, as L. B. Frankel was not a resident of the state of Nevada, he was not within the provisions of the insolvency law, and that the court had no jurisdiction of his person or property. Jurisdiction of his person was acquired by his voluntary appearance through his attorney, and jurisdiction of the property of the copartnership, and of the separate estate of each partner, was acquired by virtue of the provisions of section 47 of the act, heretofore quoted.

In *McDaniel* v. *King*, 5 Cush. 469, insolvency proceedings were instituted by a creditor against a partnership, one of the members of which had resided in the state within a year—the period fixed by the statute—but had removed therefrom, although the other never had been resident within the state. The question was presented there as here, whether insolvency proceedings could reach partnership affairs in such a case. The subject was fully considered under a statutory provision less comprehensive than ours, and the proceedings upheld. The court, speaking through Chief Justice Shaw, said: "Is it, then, a valid objection to these proceedings, under the insolvent law, against a resident of this state, that he has a partner not resident, who has not been a resident in this state, and who is not personally amenable to the laws of this state? A person may be a partner in several concerns, with persons in and out of the state; but this affords no reason why he and his separate property, and also that part of his property involved in partnership transactions, so far as such property can be reached, either directly or through him, should be screened from the operation of the insolvent law. The law proposes to take possession of his separate property, and of his separate interest in the joint property, which can be reached, and to administer these interests equitably, and nothing more. Nor, as personal property has no locality, would it defeat the operation of the assignment that such property is at the time out of the state. Whether the assignment would affect such property, either in right or

possession, if in the possession or under the control of such foreign partner, is not now in question. The only question at present is whether the proceedings here are legal and regular, not what their effect and operation may be, here or elsewhere. If it were otherwise—if it were held that the insolvent laws do not apply to the case of a debtor, who is personally amenable to our laws, because there is a joint debtor, liable for the same debt, who is not personally amenable—the result would be that. creditors would be left, as before the act, to a race of diligence, in seizing and appropriating the debtor's property; and one great purpose of the act, an equal distribution of the debtor's property, would be defeated. The twenty-first section of the statute clearly contemplates the case where the debtor, who is amenable, has. one or more partners in and out of the state. It is objected that this construction would make the act operate upon foreign citizens. We are not to presume that the legislature intended to exceed the just limits of legislative power, nor could such intention be carried into effect had they entertained it; but the purpose was to carry out the policy of an insolvent law, as far as from the nature of the case it was practicable to do it, as well against partners as individuals. The assignment will apply to property within reach of the assignee; and it is sufficient for the present purpose that there was partnership property within this state subject to the operation of its laws, that the commissioner had jurisdiction, and the proceedings were regularly instituted; and it is not necessary now to inquire whether the assignee can go into another state to reach property there, or how far the proceedings can operate in other states, or upon the rights of foreign residents."

We are of opinion that the orders appealed from should be affirmed. It is so ordered.

LEONARD, C. J., did not participate in this decision.