[L. A. No. 18946.   In Bank.   June 26, 1946.]

THE RESCUE ARMY (a Corporation) et al., Petitioners, v. THE MUNICIPAL COURT OF THE CITY OF LOS ANGELES, Respondent.

Robert H. Wallis for Petitioners.

Ray L. Chesebro, City Attorney, Donald M. Redwine, Assistant City Attorney, and John L. Bland, Deputy City Attorney, for Respondent.

Victor Ford Collins, Francis D. R. Moote and David Coleman as Amici Curiae on behalf of Respondent.

GIBSON, C. J.—Petitioners seek a writ of prohibition to restrain the Municipal Court of the City of Los Angeles from proceeding to try petitioner Murdock for the alleged violation of certain sections of an ordinance, regulating the solicitation of contributions, which it is claimed are in conflict with the federal Constitution, Amendments I and XIV, and the California Constitution, article I, section 21. It is alleged that Murdock has been twice convicted of a violation of the ordinance, that each time the conviction was reversed by the appellate department of the superior court, that a third trial has been ordered, and that the respondent court will proceed therewith unless restrained.

The constitutionality of a statute or ordinance may be tested by prohibition on the ground that invalidity of the legislation goes to the jurisdiction of the court to proceed to try the case. (See *Whitney* v. *Superior Court,* 182 Cal. 114 [187 P. 12] ; *Levy* v. *Superior Court,* 105 Cal. 600 [38 P. 965, 29 L.R.A. 811] ; *Arfsten* v. *Superior Court,* 20 Cal.App.

269, 275 [128 P. 949]; *cf. Broady* v. *Jennings,* 70 Cal.App. 647 [234 P. 120].) This rule is supported by the great weight of authority in other states. (See cases collected in 113 A.L.R. 796, 800; 42 Am.Jur. 168.) The same principle has been applied in cases where habeas corpus has been used to test the constitutionality of an ordinance. (See *In re McCoy,* 10 Cal.App. 116, 124-125 [101 P. 419]; *In re Vitalie,* 117 Cal. App. 553, 557 [4 P.2d 171]; *cf. Ex parte Kearny,* 55 Cal. 212; Ferris, Extraordinary Remedies (1926) 83; 1 Bailey on Habeas Corpus (1913) 91-93; 25 Am.Jur. 164.) Although the right to discharge by habeas corpus is not limited to cases in which a court has exceeded its jurisdiction (see Pen. Code, §§ 1485, 1487; *In re Bell,* 19 Cal.2d 488, 492-495 [122 P.2d 22]; *Portnoy* v. *Superior Court,* 20 Cal.2d 375, 378 [125 P.2d 487]), the writ has been traditionally used for that purpose. (See *In re Vitalie,* 117 Cal.App. 553, 557 [4 P.2d 171].)

The view that constitutionality goes to jurisdiction has at times disturbed the courts because of the possibility that full application of the theory might render otherwise final judgments vulnerable to collateral attack, and confusion also has sometimes arisen because of a failure to understand that a court has jurisdiction to determine its own jurisdiction in the first instance. The difficulties inherent in applying the term jurisdiction in cases involving unconstitutional statutes impelled the court in the Bell case to recognize that habeas corpus may be used in certain situations to test the constitutionality of a statute whether or not there is a want of jurisdiction. (19 Cal.2d at pp. 492, et seq.) In prohibition, however, we are limited by statute to proceedings without or in excess of jurisdiction (Code Civ. Proc., § 1102) and we are therefore squarely confronted with the problems referred to above.

The fact that a trial court has no jurisdiction within the meaning of the term as used in certiorari and prohibition proceedings does not mean that a judgment based upon an unconstitutional statute is open to collateral attack. In *Chicot County D. Dist.* v. *Baxter State Bank,* 308 U.S. 371 [60 S.Ct. 317, 84 L.Ed. 329], a civil case, the court declared that broad statements to the effect that unconstitutional laws confer no rights whatsoever must be taken with qualifications and that a decree based upon an assumption of validity is res judicata. (See, also, 136 A.L.R. 1032; (1942) 28 Va.L.Rev. 656-657; (1942) 27 IowaL.Rev. 315-322 and (1942) 26 Minn. L.Rev. 658-661.) In certiorari and prohibition proceed-

ings the term jurisdiction has a very broad meaning, and a writ may be granted where the court has no jurisdiction to act except in a particular manner, even though it has jurisdiction, in the fundamental sense, over the subject matter and the parties. (*Abelleira* v. *District Court of Appeal*, 17 Cal.2d 280, 287 et seq. [109 P.2d 942, 132 A.L.R. 715] ; *Hill* v. *Superior Court*, 16 Cal.2d 527 [106 P.2d 876] ; *Fortenbury* v. *Superior Court*, 16 Cal.2d 405 [106 P.2d 411].)  ▆▆  It does not follow, therefore, that to allow prohibition in such cases will result in opening the door to collateral attack.

▆▆  The Bell case correctly declares that the trial court has jurisdiction to determine whether the statute is constitutional, and the same is true as to any other jurisdictional defense. The mere assertion of a claim of unconstitutionality does not oust the trial court of jurisdiction, because the very issue of constitutionality is one which the court has jurisdiction to determine. (See discussion, *In re Bell, supra*, 19 Cal.2d 488, 492.) This proposition, however, is not inconsistent with the holding that prohibition lies to restrain a court from proceeding without or in excess of jurisdiction. (See *Abelleira* v. *District Court of Appeal*, 17 Cal.2d 280 [109 P. 2d 942, 132 A.L.R. 715] ; *Hill* v. *Superior Court*, 16 Cal.2d 527 [106 P.2d 876].) A court has jurisdiction to determine its own jurisdiction, for a basic issue in any case before a tribunal is its power to act, and it must have authority to decide that question in the first instance. ▆▆  It is necessary, therefore, to challenge the jurisdiction of the trial court *in that court*, by demurrer, motion, plea or other objection of some kind, so that *that court* may preliminarily decide the question whether it has jurisdiction to proceed. And unless a party can show that a lower tribunal, *after first determining that it has jurisdiction, is proceeding to exercise it*, there is nothing for a higher court to prohibit. This obvious principle is one of the cornerstones of our system of lower and higher tribunals.

▆▆  The statement in *Portnoy* v. *Superior Court*, 20 Cal. 2d 375, 378 [125 P.2d 487], that a trial court is not deprived of jurisdiction to determine the constitutionality of a particular ordinance or statute by virtue of the fact that it may decide the question erroneously, is properly applicable to this basic right of the trial court to decide the question of jurisdiction in the first instance.

▆▆  When, however, the trial court has heard and de-

termined the jurisdictional challenge, and has decided in favor of its own jurisdiction, and then proceeds to *act*, that is, *to try* the cause on its merits, the situation is entirely different. It then may be properly claimed that a court without jurisdiction is purporting to *exercise it*. At this stage, jurisdiction to determine jurisdiction has been exercised, and the higher courts will, in an appropriate case, restrain the lower court from acting in excess of jurisdiction (see, e. g., *Greenberg* v. *Superior Court*, 19 Cal.2d 319 [121 P.2d 713]; *Abelleira* v. *District Court of Appeal*, 17 Cal.2d 280 [109 P.2d 942, 132 A.L.R. 715]; *Jackson* v. *Superior Court*, 10 Cal.2d 350 [74 P.2d 243, 113 A.L.R. 1422].) ■ The petition should affirmatively allege that the challenge to jurisdiction was raised in the lower court.

Although the petition in the present case does not affirmatively allege that the jurisdiction of the municipal court was challenged by an appropriate motion, the parties do not assert such a challenge was not made, and since Murdock has been twice tried for the violation of an ordinance which from the outset he has claimed to be unconstitutional, and the case has been set for trial a third time, it is apparent that the court has decided in favor of its own jurisdiction and is proceeding to exercise it. Moreover, although the requirement that before applying for prohibition the claim of unconstitutionality must be made in the trial court has been generally observed in practice (see *Jackson* v. *Superior Court, supra,* and *Greenberg* v. *Superior Court, supra*) the requirement that the petition must affirmatively allege compliance with the condition has not been emphasized in previous decisions of this court. Under these circumstances we have determined that it is not in the interests of justice to refuse to entertain the application because of the absence of a more complete showing in the petition.

■ It is not, of course, a proper case for prohibition if there is a plain, speedy and adequate remedy in the ordinary course of law. As we have seen, the constitutional challenge may ordinarily be made by demurrer or motion in the trial court. In addition, habeas corpus may be used to test the constitutionality of a statute (*In re Bell*, 19 Cal.2d 488 [122 P.2d 22]), and the availability of that remedy has been held to be a complete bar to the issuance of prohibition. (*Leach* v. *Superior Court* (1932), 215 Cal. 531 [12 P.2d 1].) But where, as here, the defendant cannot use habeas corpus because he

is not being deprived of his liberty, he should not be refused prohibition, while awaiting trial, solely on the ground that habeas corpus would be available if he would submit to imprisonment.

■ The next question, therefore, is whether trial and appeal are adequate remedies under the circumstances of this case. A remedy is not inadequate merely because more time would be consumed by pursuing it through the ordinary course of law than would be required in the use of the extraordinary writ of prohibition. (*Bennett* v. *Superior Court*, 218 Cal. 153, 156 [21 P.2d 946]; *Lindley* v. *Superior Court*, 141 Cal. 220 [74 P. 765]; *Agassiz* v. *Superior Court*, 90 Cal. 101 [27 P. 49].) Experience has shown that most of the meritorious defenses are sustained and most of the unsubstantial constitutional or other objections are weeded out at the proper time on the proper showing during the trial or on appeal. These remedies are therefore considered adequate in the usual situations. If this were not so, then whenever jurisdiction is challenged prohibition would lie and the trial of the case would be interrupted until the reviewing court passed upon the intermediate question and appellate courts in many cases would be converted into *nisi prius* courts. (*Agassiz* v. *Superior Court*, 90 Cal. 101, 103 [27 P. 49].)

It does not follow, however, that the remedies of trial and appeal must be considered adequate in all situations. It has been held in two recent cases that these remedies did not afford sufficient relief under the circumstances there presented. (*Greenberg* v. *Superior Court*, 19 Cal.2d 319 [121 P.2d 713]; *Jackson* v. *Superior Court*, 10 Cal.2d 350 [74 P.2d 243, 113 A.L.R. 1422].) In the Jackson case an attempt was made to retry the defendants on the identical charge for which they previously had been in jeopardy. In the Greenberg case there was an indictment of an individual against whom no evidence at all was presented to the grand jury. The issue of jurisdiction was first raised in both cases by motion or demurrer in the trial court and petitioners sought prohibition only after an adverse ruling below. The disregard of the fundamental rights of the defendants in these cases was so obvious and flagrant that this court felt that the expense, effort and delay of trial in the superior court would be an unfair burden on the petitioners.

■ The fact that the remedies of trial and appeal were considered adequate in some cases and not in others does not

mean that the application for the writ was arbitrarily granted in one and refused in another or that the decisions cannot be reconciled on principle. It is difficult, if not impossible, to lay down a hard and fast rule which will govern all situations, and it must be determined in each case, not only on the basis of precedent but from an examination of all the facts, whether there is an adequate remedy in the ordinary course of law. A reviewing court, in order to prevent a failure of justice, has discretion in accordance with established legal principles and practice, to determine the circumstances which justify the use of prohibition to restrain a lower tribunal from acting without or in excess of its jurisdiction. And in the exercise of that discretion it may take into consideration the desirability of the prompt settlement of an important jurisdictional question so that a multiplicity of void proceedings in other cases will be prevented.

As heretofore pointed out, petitioner Murdock has been subjected to two trials and has successfully prosecuted two appeals from judgments of conviction. We granted a hearing in this matter after petitioners' application for a writ to restrain a third trial was denied by the district court of appeal, and, in order to secure uniformity of decision of related problems, transferred to this court the appeal in *Gospel Army* v. *City of Los Angeles,* 27 Cal.2d 232 [163 P.2d 704], in which plaintiff sought to enjoin the enforcement of the same ordinance. We should not under these circumstances, in fairness to petitioner or respondent court, refuse to decide in this proceeding the jurisdictional question involved in the criminal charges, on the ground that there is a plain, speedy and adequate remedy by trial and appeal.

We come, therefore, to the question whether the sections of the Los Angeles Charities and Relief Ordinance under which Murdock is charged are unconstitutional. In the Gospel Army case, *supra,* we examined this legislation and some of the basic problems here involved are answered by our decision in that case, but we did not have occasion to deal specifically with one of the sections of the ordinance under which Murdock is charged. A certain amount of repetition of our discussion in the Gospel Army case is unavoidable if we are to present in an orderly and understandable manner the issues raised by petitioners' contentions in this proceeding.

Insofar as pertinent here, the ordinance provides that no

person shall solicit any contribution for any charitable purpose unless there shall be filed with the Department of Social Service written notice of intention to solicit, together with information concerning the character of the solicitation, how it is to be made, and the purpose for which the funds are to be used. (§ 44.05.)[1] The department is authorized to investigate the statements made by the applicant and to issue information cards setting forth such facts as may be necessary to acquaint the public with the nature and worthiness of the purpose for which the solicitation is made. (§ 44.03.)[2] The solicitor is required to exhibit the information card and read it to the

---

[1]Sec. 44.05. CHARITY SOLICITATION—NOTICE OF INTENTION:

No person shall solicit, nor shall any officer or member of any association authorize any person to solicit, any contribution for any charitable purpose unless, within the fiscal year of the City in which such solicitation is made and at least ten (10) days prior to the beginning of such solicitation, there shall have been filed with the Department, on a form furnished by said Department, by such person or association upon whose behalf the solicitation is made, written Notice of Intention to solicit such contribution, which notice shall contain complete information as follows:

(a) The purpose of the solicitation and use of the contribution to be solicited;

(b) A specific statement, supported by reasons and, if available, figures, showing the need for the contribution proposed to be solicited;

(c) The character of such solicitation and how it will be made or conducted;

(d) The expenses of the solicitation, including salaries and other items, if any, regardless or from what funds such expenses are payable;

(e) What portion of the contributions collected as a result of the solicitation will remain available for application to the specific purposes declared in the Notice of Intention as the object of the solicitation;

(f) A specific statement of all contributions collected or received by such person or association within the calendar year immediately preceding the filing of such Notice of Intention. The expenditures or use made of such contributions, together with the names and addresses of all persons or associations receiving salaries, wages, compensation, commissions or emoluments from such contributions, and the respective amounts thereof;

(g) The names and addresses of the officers and directors of any such association for which the solicitation is proposed to be made;

(h) A copy of the resolution, if any, of any such association authorizing such solicitation, certified to as a true and correct copy of the original of such resolution by the officer of such association having charge of the records thereof;

(i) A statement that the signers of such Notice have read and are familiar with the provisions of this Article and will require all solicitors engaged in such solicitation to read and be familiar with all sections of this Article prior to making any such solicitation.

[2]Sec. 44.03. POWERS OF DEPARTMENT:

The Department shall have the following powers:

(a) To investigate the allegations of Notice of Intention, or any statement or reports;

(b) To have access to and inspect and make copies of all books,

person solicited, or present it for his perusal before accepting a contribution. (§ 44.12.)[3] It is incumbent upon persons soliciting contributions for charity by means of receptacles in certain specified publicly owned and controlled places to secure the express written permission of the Board of Social Service Commissioners (§ 44.09(a))[4]; and anyone making such solicitations by means of receptacles in certain other places open or accessible to the public is required to file a "notice of intention" as required by section 44.05. (§ 44.09 (b).)[4]

The ordinance is designed to protect the public from fraud and deception in the solicitation of funds for charity and to provide the public with information from which it may determine the nature and worthiness of the charitable purpose for which the collection is made. The regulatory provisions apply to all charitable solicitations, and though collections made solely for missionary, evangelical and other religious purposes are exempted therefrom, it is clear that the intent is to regulate charitable solicitations whether or not they are part of a

records and papers of such person, by or on whose behalf any solicitation is made;

(c) To investigate at any time the methods of making or conducting any such solicitation;

(d) To issue to all solicitors Information Cards which cards shall show:

(1) That same is issued as information for the public and is not an endorsement;

(2) The Board may, pursuant to Ordinance No. 34982, omit above provision and state that they endorse such charitable association;

(3) The pertinent facts set forth in Notice of Intention required under Section 44.05 of this Article;

(4) Any additional information obtained as shall in the opinion of the Board be of assistance to the public to determine the nature and worthiness of the purpose for which the solicitation is made;

(e) To charge a fee for supplying Information Cards, at the rate of four cents per card; provided that when more than twenty-five cards are issued at one time for the same solicitation, the fee for all such cards in excess of twenty-five shall be one cent per card.

[3]Sec. 4412. SOLICITATION—INFORMATION CARD:

No person shall solicit any contributions unless he exhibits an Information Card provided for in Sec. 44.03 of this Article and reads it to the person solicited or presents it to said person for his perusal, allowing him sufficient opportunity to read same, before accepting any contribution so solicited.

[4]Sec. 4409. [As amended by Ordinance No. 84,121, approved Feb. 5, 1941.] SOLICITATION—BOXES—RECEPTACLES.

(a) No person shall solicit any contribution for any purpose by means of any box or receptacle, upon any public street, sidewalk or way, or in any public park or in any publicly owned or controlled place, except by the express written permission of the Board.

(b) No person shall solicit any charitable contribution, or any con-

religious program. In the Gospel Army case, *supra,* we held that the prior restraint thus imposed does not contravene the liberties guaranteed by the First Amendment.

In *Reynolds* v. *United States,* 98 U.S. 145, 164 [25 L.Ed. 244], Chief Justice Waite, in commenting upon a statement of Thomas Jefferson concerning the meaning of the First Amendment, to the effect "that the legislative powers of the government reach actions only, and not opinions," said: "Coming as this does from an acknowledged leader of the advocates of the measure, it may be accepted almost as an authoritative declaration of the scope and effect of the amendment thus secured. Congress was deprived of all legislative power over mere opinion, but was left free to reach actions which were in violation of social duties or subversive of good order." Mr. Justice Roberts in *Cantwell* v. *Connecticut,* 310 U.S. 296, 303-304 [60 S.Ct. 900, 84 L.Ed. 1213, 128 A.L.R. 1352], restated the rule in clear and simple language, as follows: "Thus the Amendment embraces two concepts,—freedom to believe and freedom to act. The first is absolute but, in the nature of things, the second cannot be. Conduct remains subject to regulation for the protection of society."

There can be no question, therefore, that a person is free to hold whatever belief his conscience dictates, but when he translates his belief into action he may be required to conform to reasonable regulations which are applicable to all persons and are designed to accomplish a permissible objective. (*Gospel Army* v. *City of Los Angeles, supra.*)

Petitioners allege that Murdock was charged with having violated sections 44.09 and 44.12 of the Charities and Relief Ordinance.

Section 44.12, requiring a solicitor to exhibit an information card to the person solicited, was approved in the Gospel Army case, *supra.* We held in that case that information cards issue automatically upon the filing of the required information and the payment of the four cents for each card, and that the department is without authority to with-

tribution for any real or purported charitable purpose, by means of any box or receptacle in any place immediately abutting upon any public sidewalk or way, or in any place of business open to the public, or in any room, hallway, corridor, lobby or entranceway, or other place open to or accessible to the public, or in any place of public resort, without first filing with the Department a "notice of intention" as required by Sec. 44.05, and every person so soliciting must in all other respects comply with the provisions of this Article.

hold such cards when the requirements are met. What we said there disposes of petitioners' contentions here with respect to the validity of the charge against Murdock based on this provision.

We had no occasion in the Gospel Army case, however, to give specific consideration to section 44.09 which underlies the other charge pending against Murdock. Subdivision (a) of this section makes it incumbent upon persons soliciting contributions for charitable purposes *by means of receptacles in certain specified publicly owned or controlled places* to secure the express written permission of the board. It is well known that religious and charitable organizations frequently use receptacles to collect money from individuals in public places. It is obvious that it would be exceedingly difficult to obtain contributions in congested areas if the solicitor had to present each person solicited with an information card. It is apparent also that it would be hard to enforce a requirement of that kind under such circumstances.

When section 44.09(a) is read in the light of these circumstances and difficulties which give rise to the necessity for the requirement of a permit when contributions are to be solicited by receptacles, sufficient standards for the issuance of such permit are inherent in and follow from the reasons requiring it. While persons solicited by means of an information card are thereby sufficiently advised to discern any unfair or fraudulent scheme, passers-by solicited by means of receptacles have no similar chance of protecting themselves. Hence, if fraud appears from the information secured from those seeking to solicit by means of receptacles, the board should decline to issue a permit. Otherwise, solicitation by this method would secure financial support that unquestionably would be denied if the solicitation were made by use of an information card which disclosed the fraud to the persons solicited. In addition to protection against fraud, the requirement of a permit to solicit charitable contributions in public places by means of receptacles, assures protection with respect to the maintenance of the public convenience and safety for it is conceivable that solicitation by this method under some conditions would interfere with the free flow of traffic. We conclude, therefore, that if subdivision (a) of section 44.09 is read, as it must be, in light of the purpose and context of the entire ordinance, on the one hand, and the peculiar circumstances attendant upon collections by means of receptacles in public places,

on the other hand, that the denial of a permit is warranted only if the information furnished to the board discloses fraud or if the solicitation as planned would interfere with the public convenience and safety. So construed, the standards applicable to the granting of the permit are reasonable and the condition imposed by subdivision (a) does not prevent or unduly restrict the collection of funds. The requirement of the subdivision is not only reasonable but assures regulation without discrimination as to persons or causes. It may be added that the numerous other recognized methods of collecting funds are available to petitioner.

It is suggested that subdivision (a) imposes the same restraint as did the statute condemned in *Cantwell* v. *Connecticut*, 310 U. S. 296 [60 S.Ct. 900, 84 L.Ed. 1213, 128 A.L.R. 1352]. That statute prohibited solicitation of money for religious, charitable or philanthropic causes without the approval of an administrative official. The ordinance challenged in this proceeding, however, is materially different from the statute involved in the Cantwell case. The statute there condemned empowered an administrative official to appraise the facts and to withhold permission to solicit if he determined the cause was not a religious one. The court held that to so limit the right of solicitation placed a forbidden burden upon the exercise of religious liberty.

It is clear, however, from what has been said before that the right to the permit required in subdivision (a) of section 44.09 does not depend upon a religious test. The board is not authorized or empowered to appraise the nature or worthiness of a religious cause or to deny a permit upon the ground that the cause is not a religious one. As before stated, the authority of the board is limited to regulating the issuance of permits for the solicitation of funds in the designated publicly owned or controlled places *by means of receptacles* for the sole purpose of preventing fraudulent practices and protecting the safety and convenience of the public. It is held in the Cantwell case that "a State may by general and non-discriminatory legislation regulate the times, the places, and the manner of soliciting upon its streets, and of holding meetings thereon; and may in other respects safeguard the peace, good order and comfort of the community, without unconstitutionally invading the liberties protected by the Fourteenth Amendment. . . . The general regulation, in the public interest, of solicitation, which does not involve any religious test and does not un-

reasonably obstruct or delay the collection of funds, is not open to any constitutional objection, even though the collection be for a religious purpose. Such regulation would not constitute a prohibited previous restraint on the free exercise of religion or interpose an inadmissible obstacle to its exercise." (310 U. S. 304, 305.)

Subdivision (b) of the section relates to the solicitation of charitable contributions by means of receptacles in certain specified places not included in subdivision (a). In such cases the solicitor is required to give the "notice of intention" provided for in section 44.05. That section was approved in the Gospel Army case and for the reasons there stated the requirements of section 44.12 are valid.

Petitioners further contend that the ordinance is being unconstitutionally applied as to them. The allegations relied upon in support of this contention, however, are denied by the answer and the issues of fact thus presented will not be determined by us in this proceeding.

We conclude, therefore, that the provisions of the ordinance underlying the charges against Murdock are constitutional, and that in the absence of admitted or proven facts showing that the ordinance is being unconstitutionally applied, the alternative writ must be discharged and the peremptory writ must be denied. It is so ordered.

Shenk, J., Traynor, J., and Spence, J., concurred.

CARTER, J., Dissenting.—I agree that the instant case is a proper one for review by a writ of prohibition but I cannot agree with the reasoning followed by the opinion of Chief Justice Gibson in arriving at that result.

It is fundamental that a court, whether it is a trial or appellate court, has the jurisdiction to determine its own jurisdiction. (*In re Grove Street,* 61 Cal. 438; *Clary* v. *Hoagland,* 6 Cal. 685; *Cohen* v. *Barrett,* 5 Cal. 195; *In re Meisner,* 30 Cal.App.2d 290 [86 P.2d 124]; *In re Wyatt,* 114 Cal.App. 557 [300 P. 132]; *Fitzpatrick* v. *Sonoma County,* 97 Cal.App. 588 [276 P. 113]; *In re Tassey,* 81 Cal.App. 287 [253 P. 948]; *Dillon* v. *Dillon,* 45 Cal.App. 191 [187 P. 27]; 21 C.J.S., Courts, § 113.) The general rule is stated in 21 Corpus Juris Secundum, Courts, section 113. "Every court has judicial power to hear and determine, or inquire into, the question of its own jurisdiction, both as to parties and as to subject matter, and

to decide all questions, whether of law or fact, the decision of which is necessary to determine the question of jurisdiction.'' And as a necessary corollary to that proposition it has jurisdiction to decide the jurisdictional question wrongly as well as rightly. (*Portnoy* v. *Superior Court*, 20 Cal.2d 375 [125 P.2d 487] ; *In re Bell*, 19 Cal.2d 488 [122 P.2d 22] ; *Truck Owners etc., Inc.* v. *Superior Court*, 194 Cal. 146 [228 P. 19] ; *Morehouse* v. *Superior Court*, 124 Cal.App. 38 [12 P.2d 133].) These things are conceded by the opinion of the chief justice but it goes on to say that once it has decided the question erroneously and is proceeding to exercise that jurisdiction it may be restrained by a higher court from exercising it; that at that stage jurisdiction to determine jurisdiction has been exercised, implying that *thereafter* the court does not have jurisdiction because it has decided erroneously, and hence one of the extraordinary writs for testing jurisdiction will lie. The fallacy in that reasoning lies in the assumption that at some stage in the proceeding the court suddenly steps from a possession of power to a lack of it when all of the time the basic question was present of whether or not it had jurisdiction. A court may determine its jurisdiction at any stage of the proceeding. It is always an issue before it. (*Williams* v. *Sherman,* 36 Idaho 494 [212 P. 971].) It is probably due to the thought that if a court has jurisdiction to decide its own jurisdiction correctly or incorrectly, its determination cannot be questioned by a jurisdictional writ, that leads to the idle distinction between power to determine power and the exercise of the power once a favorable determination is made. The issue need not be complicated in that fashion. It is simple. Of course a court has jurisdiction to decide its jurisdiction, and it may be right or wrong. In *either* event the jurisdictional writs lie to review its decision to ascertain whether the conclusion was correct. We are assuming that the court in making its decision is passing upon a question of *jurisdiction.* The question still remains one of *jurisdiction* after the decision as well as before and hence the jurisdictional writs are available to review it. The higher court entertaining the writ may conclude that the lower court was correct in its result and deny relief or the opposite conclusion may be reached and relief granted.

Perhaps the reasoning in the majority opinion was adopted to escape the untenable position taken by the majority of this court in *Portnoy* v. *Superior Court, supra.* It was there

stated, after declaring that a court had jurisdiction to determine jurisdiction (the constitutionality of a statute) erroneously: "In the present case both the justice's court and the superior court on appeal have held that the ordinance is constitutional, and it cannot be said that in so holding they had exceeded their jurisdiction." This statement is clearly contrary to the holding in the majority opinion in the case at bar. If, as conceded in the opinion of the chief justice, the issue of constitutionality goes to the *jurisdiction* of the court, then that issue is still present and the decision of the court on that issue was subject to review by certiorari. The issue thus boils down to the simple proposition that whenever a lower court decides a jurisdictional question its decision is subject to review by certiorari, prohibition, habeas corpus or other appropriate writ. That must be so because the question involved goes to the jurisdiction of the court. This does not mean that the lower court will not be given the opportunity to first decide the  jurisdictional question. That is a matter of procedure—a matter of whether and when the higher court deems it wise to intercede—all of which is involved in the problem of whether other remedies are adequate. It does not involve the controversy of whether a jurisdictional question is present.

This brings us to the question of whether such a question is involved in the instant case, remembering that we are not concerned with the accuracy of the lower court's decision or its power to pass upon it. The constitutionality of a statute under which a court is acting goes to the jurisdiction of the court (*Whitney* v. *Superior Court,* 182 Cal. 114 [187 P. 12]; *Levy* v. *Superior Court,* 105 Cal. 600 [38 P. 965, 29 L.R.A. 811]), and if it is unconstitutional, any order or judgment made or rendered pursuant thereto is void and subject to collateral attack.  The situation is no different than if the crime charged had been committed outside the territorial limits of the area over which the court had jurisdiction or was a crime which was within the exclusive jurisdiction of another court. In either case the lower court would have no jurisdiction to proceed with a prosecution and a higher court could issue a prerogative writ to stay such prosecution at any point. (*Antilla* v. *Justice's Court,* 209 Cal. 621 [290 P. 43].)

The ordinance involved is clearly unconstitutional. I have set forth in my dissenting opinion in *Gospel Army* v. *City of Los Angeles,* 27 Cal.2d 232, 250 [163 P.2d 704], the reasons for that conclusion and I here repeat those views.

There are additional factors applying to the particular provision of the ordinance involved in the instant case, which render such provision invalid. The provision reads § 44.09(a)): "No person shall solicit *any* contribution for *any purpose* by means of any box or receptacle, upon any public street, sidewalk or way, or in any public park or in any publicly owned or controlled place, except by express written permission of the Board." (Emphasis added.) The language is broad and comprehensive. Giving effect to all of its language as must be done in interpreting an ordinance, it clearly reaches solicitation on public property whether the receptacle is carried by the solicitor, and there is no obstruction of traffic, or is placed in or on the public place and is under the supervision of an attendant, or is left unattended. All three of those aspects of the solicitation are necessarily included in the wording and cannot be separated. If the provision is invalid as to one of them it is invalid as to all. Leaving aside for the instant the authority of the officials to give permission to solicit thereunder, that is, treating the clause as an absolute prohibition against soliciting on public property by use of a receptacle, it is clearly a violation of Murdock's right to freedom of religion. The solicitation of funds for the cause is a legitimate incident of the exercise of religious freedom. The exercise of that freedom even though receptacles are used cannot be wholly limited to places other than public property. In commenting on a statute stating that no child under certain ages shall sell any magazine or merchandise on any street or in any public place, the Supreme Court of the United States stated in *Prince* v. *Massachusetts,* 321 U.S. 158, 167 [64 S.Ct. 438, at page 443; 88 L.Ed. 645, 653]: "Concededly a statute or ordinance identical in terms with Section 69, except that it is applicable to adults or all persons generally, would be invalid. *Kim-Young* v. *California,* 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155; *Nichols* v. *Massachusetts,* 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155; *Jamison* v. *Texas,* 318 U.S. 413, 63 S.Ct. 669, 87 L.Ed. 869; *Murdock* v. *Pennsylvania,* 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292, 146 A.L.R. 81; *Martin* v. *City of Struthers,* 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313." And later: "Street preaching, whether oral or by handing out literature, is not the primary use of the highway, even for adults. While for them it cannot be wholly prohibited, it can be regulated within reasonable limits in accommodation to the primary and other incidental uses."

The fact that solicitation may be made under section 44.09(a) by express permission of the public officials does not save it. Where a statute is void on its face, such as is true of subdivision (a), the mere fact that an official may give consent to the conduct does not cure it when, as far as appears, the discretion of the official is uncontrolled—is guided by no valid signposts and he may act arbitrarily. Nor need a permit be sought under such circumstances as a prerequisite to raising the constitutional question. (See *Cantwell* v. *Connecticut*, 310 U. S. 296 [60 S.Ct. 900, 84 L.Ed. 1213, 128 A.L.R. 1352]; *Schneider* v. *State*, 308 U.S. 147 [60 S.Ct. 146, 84 L.Ed. 155]; *Hague* v. *C. I. O.*, 307 U.S. 496 [59 S.Ct. 954, 83 L.Ed. 1423]; *Lovell* v. *Griffin*, 303 U.S. 444 [58 S.Ct. 666, 82 L.Ed. 949]; *Smith* v. *Cahoon*, 283 U.S. 553 [51 S.Ct. 582, 75 L.Ed. 1264]; *cf. Cox* v. *New Hampshire*, 312 U.S. 569, 577-578 [61 S.Ct. 762, 85 L.Ed. 1049, 133 A.L.R. 1396].)

There are no standards whatsoever which the enforcing officials must follow in determining whether the permit shall be issued. The legislative body has made no determination that traffic dangers are to be avoided or fraud prevented. The refusal of the permit is not conditioned on any traffic hazard or obstruction or that the solicitor is engaged in a fraudulent scheme. In *Hague* v. *C. I. O.*, 307 U.S. 496 [59 S.Ct. 954, 83 L.Ed. 1423], the issue was the validity of an ordinance which denied use of the streets without a permit giving no standards to the officials. The court said, at page 516: *"It does not make comfort or convenience in the use of streets or parks the standard of official action.* It enables the Director of Safety to refuse a permit *on his mere opinion that such refusal will prevent 'riots, disturbances or disorderly assemblage.'* It can thus, as the record discloses, be made the instrument of arbitrary suppression of free expression of views on national affairs, *for the prohibition of all speaking will undoubtedly 'prevent' such eventualities. But uncontrolled official suppression of the privilege cannot be made a substitute for the duty to maintain order in connection with the exercise of the right."* (Emphasis added.) In the instant case, we have freedom to exercise one's religion—a right in the same class as freedom of speech. Here the ordinance does not make convenience or use of public streets a test for the standard of official action. The permit may be denied on the "mere opinion" of the official that fraud or traffic hazards may occur.

The note in 128 A.L.R. 1361 is illuminating: "While there

is a conflict among the state court decisions as to the validity under the Fourteenth Amendment to the Federal Constitution of statutes or ordinances regulating the solicitation of contribution for charitable, religious, or individual purposes by prohibiting such solicitation without a license and providing that the licensing officer or body shall issue such a license only where he deems the applicant a worthy person and his cause a worthy or bona fide cause, *it is now settled by decisions of the Supreme Court of the United States that such a statute or ordinance is void, since it authorizes a previous restraint upon the free exercise of the freedoms guaranteed by the Fourteenth Amendment by a licensing officer or body having no fixed standard for determining whether a license must be issued.*'' (Emphasis added.)

It is aptly said in *Schneider* v. *State*, 308 U.S. 147, 163 [60 S.Ct. 146, 84 L.Ed. 155] : ''It bans unlicensed communication of any views or the advocacy of any cause from door to door, and permits canvassing only subject to the power of a police officer to determine, as a censor, what literature may be distributed from house to house, and who may distribute it. *The applicant must submit to that officer's judgment evidence as to his good character and as to the absence of fraud in the 'project' he proposes to promote or the literature he intends to distribute,* and must undergo a burdensome and inquisitorial examination, including photographing and fingerprinting. In the end, his liberty to communicate with the residents of the town at their homes depends upon the exercise of the officer's discretion.'' (Emphasis added.) (See, also, *Hoyt Bros. Inc.* v. *Grand Rapids,* 260 Mich. 447 [245 N.W. 509].)

The only answer offered by the majority opinion to the lack of a standard for the issuance of permits is that as a test for the denial of permits there must be either fraud or an interference with the public safety or convenience. There is no mention whatsoever of those tests in section 44.09(a). The board is given unlimited power in passing upon an application for a permit. The majority opinion by judicial legislation places those standards in the ordinance. This attempt to unearth vague and uncertain standards *cannot stand in the face of this court's decision in In re Porterfield, ante,* p. 91 [168 P.2d 706]. This court there struck down an ordinance requiring a license (permit) to solicit, and quoted with approval from American Law Reports as follows (page 110) : ''A statute or ordinance which vests arbitrary discretion with respect to an ordinarily lawful business . . . in

public officials, without prescribing a uniform rule of action, or, in other words, which authorizes the issuing or withholding of licenses . . . according as the designated officials arbitrarily choose, without reference to all of the class to which the statute or ordinance under consideration was intended to apply, and without being controlled or guided by any *definite* rule or *specified* conditions to which all similarly situated might knowingly conform,—is unconstitutional and void." (Emphasis added.) The court then went on to say (the ordinance there was much more explicit in its standards than in the instant case) that (p. 111) "It is to be noted that section 4 of the ordinance requires that application for a license be made in writing 'upon such forms as may be provided by said city council, a copy of which shall at all times be attached to said license.' The ordinance is utterly silent as to what the content of the forms shall be." *No form whatsoever is provided in the case at bar.* Continuing in the Porterfield case: "Section 6 provides that at the hearing to be held by the council on each application for a license, evidence shall be received of the *good moral character* of the applicant and *whether or not he is likely to resort to force, violence, threat, menace, coercion,* intimidation or corrupt means in his proposed work of solicitation. 'If the city council is satisfied that said applicant is of good moral character and will not resort to force, violence, threat, menace, coercion, intimidation or corrupt means in his proposed work of solicitation, it shall direct the issuance of a license to said applicant for said purpose of solicitation upon payment of the license fee herein provided for.' " *In the case at bar there is no mention of moral character or character of a kind likely to indulge in violence, as a standard for issuing a permit. No standard whatever is set forth.* Commenting on the terms of the ordinance there involved it is said in the Porterfield case (page 111): "We are of the opinion that on the face of the ordinance *the indefinite standards which it enunciates provide a mechanism for the deprival of constitutional rights,* not only on the basis of the guaranties applicable to free speech but also on the basis of those protecting the right to engage in lawful fashion in a lawful activity. It is pointed out by petitioner that the council members in the exercise of their power might very conceivably conclude that because of an applicant's labor union affiliations or because of his attitude upon controversial labor issues he did not have the prescribed

qualities. It is entirely possible that on occasion a majority of the council might be members of a rival labor union or they might be employers engaged in a controversy with the union represented by the applicant. Certainly the standard provided by section 6 of the Redding ordinance is entirely subjective. Each council member is left to determine in his own mind what is 'likely' to be the future conduct of the applicant. The character or extent of showing necessary to satisfy the council that the applicant is of good moral character and will not resort to the activities mentioned is not set forth. Satisfaction may be circumscribed by individual whim, caprice, or personal prejudice.''

The ordinance in the case at bar cannot stand in the face of the tests applied in the Porterfield case. The ordinance involved in that case sought to place restrictions upon the constitutional right of freedom of speech. The ordinance in the case at bar seeks to restrict the constitutional right of freedom of religion. The ordinance in each case reposes in à board uncontrolled discretion to exercise arbitrary power in acting upon applications for permits to exercise such constitutional rights. The ordinance in the Porterfield case was held unconstitutional on that ground. It follows that the ordinance in the case at bar should likewise be held unconstitutional insofar as it trenches upon the constitutional right of petitioner herein.

In my opinion the writ should issue as prayed.

SCHAUER, J.—I concur in the conclusion reached by Mr. Justice Carter and in the discussion supporting his conclusion insofar as it relates to the constitutionality of the ordinance involved herein.

EDMONDS, J.—For the reasons stated by me in the Gospel Army case [27 Cal.2d 232, 276 (163 P.2d 704)] I am of the opinion that section 44.09 of the Los Angeles ordinance, as well as the provisions which were considered in the prior proceeding, are unconstitutional. Accordingly, I join in the conclusion that the writ of prohibition should issue.

Petitioners' application for a rehearing was denied July 24, 1946. Edmonds, J., Carter, J., and Schauer, J., voted for a rehearing.