**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GOSPEL MISSIONS OF AMERICA, a
religious corporation; ERICH
WAGNER, II; RAY AUSTIN; RON
BARBER; P. J. BOURBONNAIS; JAY
BOWMAN, JR.; WILLIAM CAMPBELL;
WARREN DALY; EDWARD EBELING;
ALLAN GATHUNGU; DOUGLAS
GORDEN; JEREMY HARSH; KELVIN
JACKSON; JAMES KAHL; JOHN D.
LOVE; GEORGE LOWNES; MICHAEL
MEFFORD; JOHN PROCTOR; JAMES C.
ROBERTS; JAMES RODGERS; DAVID
ROOT; DONALD STACH; JAMES
VANDERPOEL; BRENDA WAGNER;
PAUL WINN; THOMAS WISE; RUTH
WASHINGTON; RAY ZEDD,
     *Plaintiffs-Appellants,*

    v.

CITY OF LOS ANGELES; LOS
ANGELES WORK AIRPORTS; HENRY
ACOSTA, as an individual and in
his official capacity as Officer for
the Airport Police Bureau; SHIRLEY
FLUCUS, as an individual and in
her official capacity; RONALD E.
MARBREY, as an individual and in
his official capacity,
     *Defendants-Appellees.*

No. 04-55888

D.C. No.
CV-99-07038-SVW

OPINION

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Argued and Submitted
April 4, 2005—Pasadena, California

Filed August 17, 2005

Before: Alfred T. Goodwin, J. Clifford Wallace, and
Sidney R. Thomas, Circuit Judges.

Opinion by Judge Wallace

## COUNSEL

James H. Fosbinder and Rhonda M. Fosbinder, Kahului, Hawaii, for the plaintiffs-appellants.

John M. Werlich, Assistant City Attorney, Los Angeles, California, for the defendants-appellees.

---

## OPINION

WALLACE, Circuit Judge:

Gospel Missions of America (GMA) appeals from the district court's summary judgment for the City of Los Angeles (City). GMA contends that the definitions of the terms "charitable" and "solicitation" in section 44.00(b) and (g) of the Los Angeles Municipal Code (LAMC) are unconstitutionally vague and overbroad, and that their application violates the Equal Protection Clause. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

I.

GMA is a non-profit corporation that ministers and provides food, shelter, clothing and money to homeless individuals who join as members. Its members solicit funds from the public, which are used to provide for the members' needs and to support GMA. In 1992, the Los Angeles County Sheriff's Department raided properties owned by GMA to investigate suspected violations by GMA of the City's charitable solicitation laws. *See* LAMC §§ 44.00-44.15. In particular, section 44.09 provided that no one may solicit charitable contributions in the City without an Information Card, which could be obtained only after an applicant filed the information specified in section 44.04 with the Los Angeles Police Department. *Id.* §§ 44.04, 44.09. After GMA filed suit challenging the validity of these laws, the district court granted summary judgment for GMA and enjoined the City from enforcing several provisions of the laws. *Gospel Missions of Am. v. Bennett*, 951 F. Supp. 1429 (C.D. Cal. 1997) (*GMA I*).

Thereafter, the City amended its charitable solicitation laws in an effort to comply with the injunction. However, on July 8, 1999, GMA filed a complaint in the district court alleging that the City's enforcement of certain provisions violated the *GMA I* injunction and/or was unconstitutional. GMA claimed, in part, that the definitions of "charitable" and "solicitation" in LAMC § 44.00(b) and (g) were unconstitutionally vague and overbroad in violation of the First Amendment, and that its equal protection rights had been violated.

When GMA filed suit in 1999, section 44.00(b) defined the term "charitable" for purposes of the City's charitable solicitation laws to "include philanthropic, social service, benevolent and patriotic, whether they are actual or purported." LAMC § 44.00(b). Section 44.00(g) defined the term "solicitation" to include:

(1)   Any oral or written request;

(2)   The distribution, circulation, mailing, posting or publishing of any handbill;

(3)   The making of any announcement through the press, over radio or television, or by telephone, telegraph or billboard, concerning an appeal, assemblage, athletic or sports event, bazaar, benefit, campaign, contest, dance, drive, entertainment, exhibition, exposition, party, performance, picnic, sale or social gathering which the public is requested to patronize or to which the public is requested to make a contribution for any *charitable purpose* connected therewith;

(4)   The sale of, or offer to sell, any advertisement, advertising space, book, card, chance, coupon, device, magazine, membership, merchandise, subscription, ticket or any other similar token, thing or device in connection with which any appeal is made

for *charitable purposes* or when the name of any charity, philanthropy or charitable organization is used or referred to in such appeal as an inducement or reason for making such sale, or when or where in connection with such sale, a statement is made that the whole or any part of the proceeds from such sale will be donated to a *charitable purpose* or organization.

LAMC § 44.00(g) (1997) (emphasis added). In addition, section 44.00(g) clarified that "[n]o communication between natural persons personally known to each other shall constitute a solicitation." Although these definitions of "solicitation" and "charitable" were later amended in 2003, GMA is seeking money damages it allegedly sustained due only to the City's enforcement of the laws prior to these amendments. We therefore limit our review to the pre-2003 version of the laws.

After the district court sua sponte granted summary judgment for the City (*GMA II*), GMA appealed to this court. We affirmed in part, but remanded to the district court "to determine whether the 'Information Card' is the functional equivalent of a 'license' and, if so, to consider Gospel Missions' vagueness, overbreadth, and equal protection challenge to sections 44.00(b) and (g)." *Gospel Missions of Am. v. City of Los Angeles*, 328 F.3d 548, 556 (9th Cir. 2003) (*GMA III*).

On remand, the district court concluded that the Information Card is akin to a license, and therefore GMA has standing to assert an overbreadth challenge. *See Clark v. City of Lakewood*, 259 F.3d 996, 1011 (9th Cir. 2001). The City does not challenge this conclusion on appeal. The court also held that the definitions of "charitable" and "solicitation" were not unconstitutionally vague or overbroad, and that GMA's equal protection rights had not been violated. Accordingly, the district court entered summary judgment for the City. GMA filed this timely appeal.

We review de novo a district court's summary judgment on the constitutionality of a statute or ordinance. *Nunez v. City of San Diego*, 114 F.3d 935, 940 (9th Cir. 1997). "Summary judgment is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, (a) 'the district court correctly applied the relevant substantive law' and (b) there are no genuine issues of material fact in dispute." *Clark*, 259 F.3d at 1004 (citation omitted).

## II.

GMA argues that the definition of "charitable" in section 44.00(b), as well as the term "charitable purpose" in the definition of "solicitation" in section 44.00(g), are unconstitutionally vague both facially and as applied to its particular activities.

## A.

We address first GMA's challenge to the ordinance as facially vague; GMA argues that the definition of charitable solicitation "could include any panhandler with a family, any church member soliciting for it's [sic] food drive, or any political activist selling bumper stickers for his or her own patriotic cause." *See Cal. Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1149 (9th Cir. 2001) ("In the First Amendment context, facial vagueness challenges are appropriate if the statute clearly implicates free speech rights"); *Foti v. City of Menlo Park*, 146 F.3d 629, 639 n.10 (9th Cir. 1998).

**[1]** An ordinance is unconstitutionally vague "if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits," or "if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). There must be a greater degree of specificity and clarity when First Amendment freedoms are at stake. *See Cal. Teachers*,

271 F.3d at 1150. However, "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989); *see also Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972) ("Condemned to the use of words, we can never expect mathematical certainty from our language"). As a result, "uncertainty at a statute's margins will not warrant facial invalidation if it is clear what the statute proscribes 'in the vast majority of its intended applications.' " *Cal. Teachers*, 271 F.3d at 1151, *quoting Hill*, 530 U.S. at 733; *see also Grayned*, 408 U.S. at 112 (concluding that ordinance "clearly 'delineates its reach in words of common understanding' " (citation omitted)). "Facial invalidation is, manifestly, strong medicine that has been employed by the Court sparingly and only as a last resort." *Cal. Teachers*, 271 F.3d at 1155 (quotation marks and citation omitted).

**[2]** In this case, the term "charitable" is clearly a word of "common understanding" that provides a "person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned*, 408 U.S. at 108, 112. As defined in Webster's New World Dictionary (Third College Ed. 1988), "charitable" means, among other things, "kind and generous in giving money or other help to those in need." *Cf. Grayned*, 408 U.S. at 111 & n.16 (citing Webster's definition of "diversion"). The various examples of "charitable" activities in section 44.00(b) — "philanthropic, social service, benevolent and patriotic" — accord with this common definition.

**[3]** A variety of ordinances with similarly flexible terms have survived facial vagueness challenges. *See, e.g.*, *Grayned*, 408 U.S. at 107-14 (upholding ordinance that prohibited making "any noise or diversion which disturbs or tends to disturb the peace or good order of [a] school session"); *Hill*, 530 U.S. at 732 ("The statute only applies to a person who 'knowingly' approaches within eight feet of another, without that person's consent, for the purpose of engaging in oral protest, educa-

tion, or counseling. The likelihood that anyone would not understand any of those common words seems quite remote"); *Broadrick v. Oklahoma*, 413 U.S. 601, 608 (1973) (recognizing that there "may be disputes over the meaning of such terms . . . as 'partisan,' or 'take part in,' or 'affairs of' political parties," but nonetheless rejecting facial vagueness challenge); *Cal. Teachers*, 271 F.3d at 1153 (concluding that "any vagueness contained in the terms 'curriculum,' 'instruction,' 'nearly all' and 'overwhelmingly' " would not chill a substantial amount of legitimate speech); *cf. City of Chicago v. Morales*, 527 U.S. 41, 47 n.2, 62 (1999) (ordinance "inherently subjective because its application depends on whether some purpose is 'apparent' to the officer on the scene"); *Kolender v. Lawson*, 461 U.S. 352, 360-61 (1983) (ordinance which gave "full discretion" to police "to determine whether the suspect has provided a 'credible and reliable' identification" was unconstitutionally vague); *Coates v. City of Cincinnati*, 402 U.S. 611, 612-14 (1971) (ordinance which prohibited "conduct . . . annoying to persons passing by" was impermissibly vague); *United States v. Wunsch*, 84 F.3d 1110, 1119-20 (9th Cir. 1996) ("offensive personality" was an unconstitutionally vague term in the context of the statute at issue).

Furthermore, although GMA argues it is unclear whether the ordinance applies to panhandlers, church members conducting bake sales and political activists, other provisions in the ordinance provide some guidance in these situations. *See Gammoh v. City of La Habra*, 395 F.3d 1114, 1120 (9th Cir.) ("[O]therwise imprecise terms may avoid vagueness problems when used in combination with terms that provide sufficient clarity"), *amended*, 402 F.3d 875 (9th Cir. 2005); *see also Grayned*, 408 U.S. at 113-14 (vagueness of terms dispelled by other requirements in ordinance). For example, LAMC § 44.12 provides that the regulations governing solicitations do not apply where the solicitation is (1) "made upon premises owned or occupied by the person upon whose behalf such solicitation is made"; (2) made "for the relief of any natural person specified by name at the time of the solicitation where

the solicitor represents . . . that the entire amount collected . . . shall be turned over to the named beneficiary"; or (3) made by organizations "soliciting contributions solely from members thereof."

**[4]** Thus, "speculation about possible vagueness in hypothetical situations not before [us] will not support a facial attack on a statute when it is surely valid 'in the vast majority of its intended applications.' " *Hill*, 530 U.S. at 733 (citation omitted); *see also id.* (rejecting "hypertechnical theories . . . such as whether an outstretched arm constitutes 'approaching' "). We conclude that the definition of "charitable" and the term "charitable purpose" in the definition of "solicitation" are not facially vague.

### B.

GMA also seems to assert an as-applied vagueness challenge, insofar as it appears to contend that it is unclear whether its particular activities fall within the definitions of "charitable" and "solicitation." GMA argues that it "is a religious organization engaged in religious activity of funding itself, and [it] is not engaged in the type of charitable activity apparently covered by" section 44.00.

**[5]** Yet, GMA concedes that the definitions "would appear to include traditionally Christian religious activities such as 'benefactions to the poor' or 'alsmgiving.' " Indeed, as observed by the district court, the word "charity" is derived from the Latin word for "Christian love," *see* Oxford English Dictionary (2d ed. 1989), and contemporary definitions of charitable often include a religious dimension.

**[6]** Furthermore, in *Rescue Army v. Municipal Court*, 171 P.2d 8, 14-15 (Cal. 1946), the California Supreme Court indicated that an earlier version of the charitable solicitations law was intended to "regulate charitable solicitations whether or not they are part of a religious program." *See also id.* at 16

(the right to a permit under the ordinance "does not depend upon a religious test"); *Grayned*, 408 U.S. at 110 (court should consider state court interpretations of state statute). As the City points out, this interpretation is supported by the fact that until the district court's decision in *GMA I*, section 44.12 expressly exempted solicitations made "solely for evangelical, missionary or religious purposes." *See GMA I*, 951 F. Supp. at 1447-49 (holding that the exemption in section 44.12 violates the Establishment Clause). It seems logical to assume the drafters intended the term "charitable" in section 44.00 to encompass both religious and non-religious solicitations; otherwise, the previous section 44.12 exemption would have served no purpose.

**[7]** Therefore, we hold that "charitable" is a word of "common understanding" that is generally understood to describe both religious and non-religious charity. Because GMA's fundraising activities for evangelical and missionary purposes clearly constitute "solicitations" for a "charitable purpose," its as-applied vagueness challenge fails.

III.

GMA also contends that the definitions of "charitable" and "solicitation" in section 44.00(b) and (g) are unconstitutionally overbroad, because they could "include any panhandler with a family, any church member soliciting for it's [sic] food drive, or any political activist selling bumper stickers for his or her own patriotic cause."

However, section 44.00 — the only provision that we allowed GMA to challenge on remand — merely sets forth definitions; it does not in and of itself impose any restrictions on solicitations. GMA's argument seems to be that section 44.00 broadly defines the terms "charitable" and "solicitation," thereby triggering application of other provisions in the ordinance and thus unduly burdening free speech. GMA points out that the charitable solicitation laws require solici-

tors "to obtain a license and disclose substantial amounts of information about their revenues, expenses, and members," but it does not cite any particular provisions.

GMA previously challenged many of these provisions in both the district court and in the prior appeal to this court. For example, LAMC § 44.09 prohibits solicitations of charitable contributions unless the solicitor has obtained an Information Card, and LAMC § 44.02(b)(2) requires an Information Card to indicate, among other things, the "pertinent facts of the solicitation." We previously held that GMA was claim precluded from arguing that section 44.02(b)(2) was unconstitutional. *GMA III*, 328 F.3d at 557. In addition, in *GMA II*, the district court rejected GMA's constitutional challenge to LAMC § 44.04, which provides that solicitors must file a written Notice of Intention with specified information before making solicitations. On appeal in *GMA III*, GMA did not specifically contest this holding.

Insofar as GMA's overbreadth challenge overlaps with these previously litigated claims, we will not entertain a second attempt to litigate these issues. *See Leslie Salt Co. v. United States*, 55 F.3d 1388, 1392 (9th Cir. 1995) ("Under law of the case doctrine, one panel of an appellate court will not reconsider matters resolved in a prior appeal to another panel in the same case"); *cf. United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) (recognizing certain situations where a court may have discretion to depart from the law of the case).

**[8]** However, to the extent we are required to consider GMA's apparent argument that the section 44.00 definitions are overbroad because they indirectly burden solicitation activities, we hold against GMA on the merits. "[W]here conduct and not merely speech is involved, . . . the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick*, 413 U.S. at 615; *see also Virginia v. Hicks*, 539

U.S. 113, 124 (2003) ("[T]he overbreadth doctrine's concern with 'chilling' protected speech 'attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from 'pure speech' toward conduct.' " (citation omitted)). "The overbreadth claimant bears the burden of demonstrating, 'from the text of [the law] and from actual fact,' that substantial overbreadth exists." *Hicks*, 538 U.S. at 122 (citation omitted) (alteration in original).

**[9]** GMA has not satisfied this burden. It is not clear that the ordinance would apply in all of the situations described by GMA. *See* LAMC § 44.12 (providing three exemptions to the charitable solicitation laws). Nor does GMA explain why solicitations by a panhandler, church member or political activist cannot constitutionally be subject to some regulation. *Cf. Illinois ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600, 623 (2003) ("Our decisions have repeatedly recognized the legitimacy of government efforts to enable donors to make informed choices about their charitable contributions"); *Cantwell v. Connecticut*, 310 U.S. 296, 306 (1940) ("Without doubt a state may protect its citizens from fraudulent solicitation by requiring a stranger in the community, before permitting him publicly to solicit funds for any purpose, to establish his identity and his authority to act for the cause which he purports to represent"); *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 788 (1988) (citing *Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 637-38 & nn.11-12 (1980) for the proposition that a village may require charities to file financial disclosure reports). Moreover, a "statute is not invalid simply because some impermissible applications are conceivable." *United States v. Adams*, 343 F.3d 1024, 1034 (9th Cir. 2003). We conclude that GMA has not demonstrated that section 44.00(b) and (g) chill a "substantial" amount of protected speech in relation to its many legitimate applications. *See Hicks*, 539 U.S. at 123-24. As the district court pointed out, GMA does not develop its "parade of horribles."

Indeed, the heart of GMA's overbreadth argument is not that solicitations by panhandlers, church members and political activists are unconstitutionally chilled. Rather, GMA's primary contention is that the charitable solicitation laws — as a result of the broad definitions in section 44.00(b) and (g) — "impermissibly include religious organizations in the purview of the law" and should not "include their type of religious activity, nor any similar type of religious activity." GMA contends that the laws substantially burden religious practices and require financial disclosures by religious organizations, and therefore, they violate the Establishment and Free Exercise Clauses.

These arguments are beyond the scope of the remand. GMA's challenge to the application of the charitable solicitation laws to religious organizations is not technically an "overbreadth" claim, because GMA is such an organization. *See Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 802-03 (1984) (refusing to entertain overbreadth challenge where plaintiffs "failed to identify any significant difference between their claim that the ordinance is invalid on overbreadth grounds and their claim that it is unconstitutional when applied to [them]"); *Nunez*, 114 F.3d at 949 ("Technically, the overbreadth doctrine does not apply if the parties challenging the statute engage in the allegedly protected expression"); *4805 Convoy, Inc. v. City of San Diego*, 183 F.3d 1108, 1112 n.4 (9th Cir. 1999) ("[A] plaintiff whose conduct *is* protected may also bring a facial challenge to a statute that he contends is unconstitutional, without having to employ the overbreadth doctrine").

The more fundamental problem with GMA's argument is that it assumes that overbreadth challenges can be based on any constitutional provision. However, the Supreme Court suggested in *United States v. Salerno*, 481 U.S. 739 (1987), that the "overbreadth" doctrine generally encompasses only freedom-of-speech challenges. *See id.* at 745 ("[W]e have not recognized an 'overbreadth' doctrine outside the limited con-

text of the First Amendment"); *see also Alexander v. United States*, 509 U.S. 544, 555 (1993) ("The 'overbreadth' doctrine, which is a departure from traditional rules of standing, permits a defendant to make a facial challenge to an overly broad statute *restricting speech*, even if he himself has engaged in speech that could be regulated under a more narrowly drawn statute" (emphasis added)); *Canatella v. California*, 304 F.3d 843, 853 n.12 (9th Cir. 2002) (overbreadth standing pursuant to *Broadrick* "applies only to statutes that regulate speech"); *Lind v. Grimmer*, 30 F.3d 1115, 1122 (9th Cir. 1994) (suggesting overbreadth doctrine is designed to avert "a potential chilling effect on speech and lack of a proper party before the court").

**[10]** Although the Court recently suggested that overbreadth challenges can be brought in a few other settings, *see Sabri v. United States*, 541 U.S. 600, 609-10 (2004) (citing cases addressing the right to travel, the right to abortion, and legislation under section 5 of the Fourteenth Amendment), the Court stated that "[o]utside these limited settings, and absent a good reason, [it does] not extend an invitation to bring overbreadth claims." *Id.* at 610. Indeed, the Court cautioned that "facial challenges are best when infrequent," and in particular, overbreadth challenges "are especially to be discouraged." *Id.* at 609. We therefore reject GMA's overbreadth challenges based upon the Free Exercise and Establishment Clauses.

## IV.

GMA contends that the charitable solicitation laws violate the Equal Protection Clause "by treating religious organizations that rely on charitable solicitations from non-members differently from those that rely solely on solicitations from members." However, LAMC § 44.00(b) and (g) do not distinguish between member and non-member solicitations, and GMA does not specify any particular provision on which it bases its claim. The closest fitting candidate is LAMC § 44.12, which states that the charitable solicitation laws, "ex-

cept Sections 44.00 and 44.03, shall not be applicable to . . . any organization soliciting contributions solely from members thereof at the time of such solicitation."

Yet, as we have already discussed, the only equal protection argument we directed the district court to consider on remand was a challenge to LAMC § 44.00(b) and (g). GMA does not challenge the scope of the remand or argue that it should be allowed to raise other issues. *See Leslie Salt Co.*, 55 F.3d at 1392 ("In the subsequent appeal, '[t]he scope of review is narrowed to the limitations of the remand' " (citation omitted)). Morever, GMA did not even mention section 44.12 in the portion of its complaint alleging violations of the Equal Protection Clause. We therefore will not consider this equal protection argument. *See McMichael v. County of Napa*, 709 F.2d 1268, 1273 n.4 (9th Cir. 1983) (declining to consider claims not included in the complaint).

In addition, GMA argues that because the definition of "charitable purpose" is vague and overbroad, it "consequently also violates equal protection principles." As discussed above, we are unpersuaded by GMA's vagueness and overbreadth arguments. Alternatively, GMA asserts that the charitable solicitation laws treat "different groups and different types of protected activities differently based on impermissible distinctions." This vague, conclusory statement does not adequately present an issue for our review. *See Kuba v. 1-A Agric. Ass'n*, 387 F.3d 850, 855 n.5 (9th Cir. 2004); *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994) ("We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim, particularly when, as here, a host of other issues are presented for review").

**AFFIRMED.**